**HARBOR INSURANCE COMPANY,**
**Appellant/Cross–Appellee,**

v.

**OMNI CONSTRUCTION, INC.,**
**Appellee/Cross–Appellant.**

**Nos. 88–7269, 89–7019.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 6, 1990.

Decided Aug. 28, 1990.

Robert E. Heggestad, Washington, D.C., for Harbor Insurance Company, appellant in 88–7269 and cross-appellee in 89–7019.

Richard J. Webber, with whom Michael Evan Jaffe, Washington, D.C., was on the

brief for OMNI Constr., Inc., appellee in 88–7269 and cross-appellant in 89–7019.

William J. Donnelly, Jr., Washington, D.C., entered an appearance for Westminster Investing Corp., appellee in 88–7269.

Before WALD, Chief Judge; MIKVA and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Harbor Insurance Company issued to OMNI Construction Company an excess liability insurance policy that excludes from coverage any loss resulting from the rendition, by or for OMNI, of certain "professional services." After OMNI filed, and Harbor investigated, a claim arising from a loss OMNI suffered at a construction site, Harbor sought a declaratory judgment that it is not liable on the ground that a "professional service," *viz.* engineering, caused the loss. The district court found the insurer liable for the loss, on the ground that the professional service exclusion was ambiguous with respect to the coverage of a professional service performed, as here, incidental to contracting work, and awarded the insured prejudgment interest and certain attorneys' fees. Harbor appeals all aspects of that award, while OMNI cross-appeals the court's denial of certain other attorneys' fees.

We hold that the district court erred in finding the professional service exclusion ambiguous and in construing it to be inapplicable to incidental professional services. Hence, we reverse and remand the case for the district court to determine whether the loss was in fact caused by the rendition of the incidental engineering service.

## I. FACTS

OMNI contracted to construct an office building and parking garage on a lot adjacent to a building owned by Sears, Roebuck & Company in Washington, D.C. Its excavation of the site caused settlement damage to the Sears building, which OMNI agreed to repair. OMNI then sought to recover the cost of the repairs from its excess liability carrier, Harbor.

The insurance policy that Harbor issued to OMNI generally covers "an accident ... result[ing] in ... property damage ... neither expected nor intended from the standpoint of the insured." That coverage is qualified, however, by Endorsement No. 9 to the policy, entitled "Engineers and Architects Exclusion (Engineers, Architects or Surveyors Professional Liability)," which excludes from coverage any

personal injury or property damage arising out of the rendering of or the failure to render any professional services by or for the named insured, including

1. The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and
2. Supervisory, inspection or engineering services

Harbor contends that the damage to the Sears building was caused by an error in the design of the "sheeting and shoring" system that OMNI's subcontractor, Schnabel Foundation Company, designed and installed to protect the Sears building while OMNI excavated the adjacent lot. OMNI denies that the design of the sheeting and shoring system caused the damage, but argues that, in any event, it is not a "professional service" because such design work is a "means or method" of construction when done, as here, by a construction subcontractor.

The district court found that "Endorsement No. 9' is not clear on its face" because it does not say specifically whether a professional service performed by a contractor is excluded from the insurance coverage. In light of the industry custom of including such professional services within the term "means and methods" of construction, the court found that "a reasonably prudent lay person" would believe that the Endorsement does not exclude coverage for damage resulting from professional engineering services rendered "incidental to the construction work," such as the sheeting and shoring design, of a subcontractor. The district court thus concluded that the Endorsement excludes only stand-alone

**1522**

professional services, and that OMNI's loss was covered.

After the parties had stipulated to the costs that OMNI incurred in repairing the Sears building, the district court awarded OMNI the attorneys' fees it incurred in settling with Sears and in participating in Harbor's claim investigation, pursuant to the attorneys' fee coverage of the insurance policy. Because Harbor had not acted in bad faith in bringing this declaratory judgment action, however, the court, pursuant to District of Columbia caselaw, denied recovery of the attorneys' fees OMNI incurred in defending the suit. Finally, applying the District of Columbia statute that provides for prejudgment interest on a debt that was liquidated when incurred, D.C. Code § 15–108, the court awarded interest upon those elements of OMNI's claim that Harbor agreed to pay in full, but not upon those that were adjusted in the process of settlement.

## II. ANALYSIS

Harbor sought to establish at trial that (1) the damage to the Sears building was caused by an error in the design of the sheeting and shoring system; (2) such design work constitutes a "professional service"; and (3) it is therefore excluded from coverage by Endorsement No. 9. OMNI contends that the district court ruled against Harbor on the threshold issue of causation, making the second and third points (which it also addresses on their merits) irrelevant to this appeal. We disagree. The district court did opine from the bench that it "would be prepared to hold if necessary" that the damage to the Sears building was caused by the installation, and not by the design, of the sheeting and shoring system. Because the district court made no such finding, however, and because Harbor presented a substantial amount of evidence suggesting that the design was inadequate, we cannot say that the district court resolved the issue of causation. Hence, we review the question that the district court did resolve, *viz.* the meaning and reach of the exclusion of profes-

sional services from OMNI's insurance coverage.

■ Whether the Endorsement is ambiguous is an issue of law, as to which we review the district court's conclusion *de novo. Holtze v. Equitable Life Assurance Soc.*, 548 F.2d 1037, 1042 (D.C.Cir.1976). Any "ambiguity in an insurance contract must be construed in favor of the insured." *Keene Corp. v. Insurance Co. of N. America*, 667 F.2d 1034, 1041 (D.C.Cir.1981). A contract provision is ambiguous if it is

> reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.

*Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983) (quoting *Burbridge v. Howard University*, 305 A.2d 245, 247 (D.C.1973)).

■ The crux of OMNI's claim is that, in the custom of the construction industry, "professional services" performed by a subcontractor incidental to its construction work are referred to as "means and methods of construction" rather than as "professional services." OMNI contends that in light of this custom, the exclusion is ambiguous as applied to the construction industry, and that the insurance industry recognizes as much. Accordingly, OMNI argues that the exclusion must be read in accordance with the reasonable expectation of the insured, *viz.* that the term "professional services" does not apply to professional services performed by subcontractors as "means and methods" of construction. Harbor contests OMNI's claim of ambiguity, asserting that the Endorsement clearly refers, without limitation, to all services that are professional in nature and performed "by or for" the insured, regardless of whether they are provided by a purely "professional services" firm or by a subcontractor in the course of carrying out its part of the construction work.

OMNI acknowledges that, in preparing shop drawings that "detail the specifics of the work to be performed in compliance

with the architect's plans and specifications," "the subcontractors apply engineering and design skills." One of the two engineers who designed the sheeting and shoring system for Schnabel Foundation explained the design process:

> [O]nce acquiring some basic construction documents, either provided through the owner or from the contractor[s] who were employed by OMNI, and necessary soils reports, we gather all the information and go through an evaluation of what is necessary ... to have a working system. Then we would design a shoring system as a preface to installing the system.

In order to determine what type of system to use, he explained, "forces would be computed, and any reactions to determine ... what kind of tieloads are required."

After completing the drawings of the system that SFC designed for OMNI, the engineer certified them, in his capacity as a professional engineer registered with the District of Columbia, by affixing his seal to them. District of Columbia law makes it "unlawful for a registered engineer to affix or permit his seal to be affixed to any plans, specifications, or drawings for which he does not assume full responsibility for the adequacy and accuracy thereof." D.C. Code § 2–2311(b); *see generally* D.C.Code § 2–2301, *et seq.;* D.C. Building Code Suppl.1986 § 109.1. Thus, we start from the premise—which narrows the issue before us, and thus too the scope of our decision—that the design of the sheeting and shoring system clearly involved the work of a professional engineer, acting as such. From this fact alone, we are constrained tentatively to infer that such work is a "professional service" within the meaning of the "Engineers and Architects Exclusion." *See Natural Gas Pipeline Co. v. Odom Offshore Surveys, Inc.,* 697 F.Supp. 921, 928 (E.D.La.1988) (same exclusion applied to services involving "exercise [of] professional judgment, derived from special training"), *aff'd,* 889 F.2d 633 (5th Cir. 1989); *Noyes Supervision, Inc. v. Canadian Indem. Co.,* 487 F.Supp. 433, 437–38 (D.Colo.1980) (nature of act determines whether loss falls within "professional service" exclusion).

OMNI contends, nonetheless, that because the practice in the construction industry is to delegate to a subcontractor a discrete part of a construction project, rendering the subcontractor responsible for both professional and non-professional aspects of that portion of the overall project, the reference to "professional services" in Endorsement No. 9 creates an ambiguity as to whether professional services rendered as part of "means and methods" are excluded from the insurance coverage. OMNI urges that the exclusion is ambiguous and should be construed to apply only to "those non-traditional activities—the provision of construction management services or design-build work combining the roles of architect and contractor—which go beyond the work of the general contractor." Under this approach, the exclusion would apply only when the contractor takes on "design and construction responsibility ..., eliminating the traditional role of the architect." That is, the contractor would not be insured if the act—its own or, as here, that of a subcontractor—that caused the loss was "beyond the work of [a] general contractor."

In urging that the exclusion is ambiguous, OMNI points to several types of evidence. First is an article published in 1984 by the International Risk Management Institute (IRMI), which notes that Endorsement No. 9

> was originally developed to be added to the general liability policies of architects and engineers and to the policies of others who listed architects and engineers as additional insureds. The endorsement is intended to exclude coverage for claims that should be covered under the professional liability policy of the architect or engineer.

From this, OMNI draws the proposition that the "original intent of the Endorsement was to exclude from coverage activities of professional architects and engineers acting as such," by which OMNI presumably means when they are practicing their profession independent of any

construction subcontractor. That inference is not only without textual support in the passage OMNI quotes; it is in tension with the more obvious inference, *viz.* that professionals customarily have or are supposed to have professional liability insurance, so that their services should not also be covered by their general liability carrier. (The record does not indicate whether Schnabel's engineers are in fact covered by a professional liability policy, and we make no assumption either way.)

The IRMI article also warns that "[m]any normal 'course of construction' activities performed by contractors could possibly be excluded by th[e professional liability] endorsement," using as an example the design of scaffolding. Accordingly, it recommends that construction firms refuse to accept the exclusion. OMNI contends that the conditional language ("could possibly") in the above-quoted phrase constitutes an acknowledgment that the Endorsement is ambiguous. In the absence of any suggestion that designing a scaffold requires the work of a professional, however, neither the reason for such uncertainty, nor its relevance to this case, is apparent.

OMNI seeks to bolster this point with the testimony of Harbor's insurance expert [Malecki]. Confronted with the IRMI article, Harbor's expert acknowledged on cross-examination that, with respect to some activities, such as scaffolding, there might be "two reasonable interpretations" as to whether the exclusion applies. OMNI did not inquire into, however, and we will not speculate upon, whether scaffolding design requires the services of a professional engineer or architect.

Second, OMNI relies upon the testimony of its own insurance expert [Nussdorf] to the effect that the exclusion does not apply to "incidental" professional services, and of an employee of OMNI's insurance agency [Wrege], who opined that such was the understanding in the insurance industry. The insurance agent did not refer to the Harbor policy, however; he testified only that general liability policies were understood in the industry to cover incidental professional services. Perhaps so. The issue here, however, is whether a professional services exclusion effectively excludes such coverage from a general liability policy, and specifically whether the language of Endorsement No. 9 suffices to exclude it; on this, the agent's testimony is unenlightening.

OMNI's insurance expert, who happened also to be an officer of its parent company and to have played a role in procuring its insurance policies, testified that he had been assured by representatives of the insurance agency that sheeting and shoring design work performed by one of OMNI's subsidiaries—recall that the exclusion runs to professional services rendered "by or for" OMNI—would be "a general liability exposure." He had not, however, reviewed the Harbor policy and was not familiar with the terms of Endorsement No. 9. Such testimony cannot create an ambiguity that is not present on the face of the contract. *See Oler v. Liberty Mutual Ins. Co.,* 297 A.2d 333, 334 (D.C.1972) ("[U]nless it is obvious that words which appear in an insurance policy are intended to be used in a technical connotation, the words will be given the meaning which common speech imparts."); *Old American Life Ins. Co. v. Tucker,* 223 A.2d 333, 336 (D.C.1966) ("Ambiguities will not be sought if the language of the instrument has but one clear meaning, whether favorable to the insured or not.").

Finally, in a footnote, OMNI points out that its own professional liability policy, issued by Wausau to cover professional services performed by employees of OMNI, excludes "construction means and methods and construction support activities." It suggests that the wording of this exclusion supports its interpretation of the exclusion in the Harbor policy because Wausau distinguishes "means and methods" from "professional services." To the contrary: the Wausau policy suggests to us that professional services may indeed be rendered as part of means and methods. If "professional services" did not otherwise include professional services rendered as "construction means and methods," then their exclusion would be meaningless. We have here, in other words, an example of what is

meant by that often misused phrase, "the exception that proves the rule."

In sum, OMNI has not shown that the reference in Endorsement No. 9 to "professional services" makes the scope of its exclusion ambiguous in the context of the construction industry. The exclusion clearly refers to the nature of the service provided, not to the nature of the service provider; and whether a particular service is professional in nature is not determined by whether the entity responsible for it also performs related non-professional work.

Under OMNI's preferred interpretation, a loss caused by defective engineering work would be covered if both the engineering and its implementation were done by a single contractor, but not if by separate engineering and construction contractors. In the former case, the design work would be considered "incidental" to the construction, and hence covered; and in the latter case, it would be considered a professional service, and hence excluded. The rather straightforward terms of Endorsement No. 9 do not admit of such a distinction. Furthermore, the purpose of the Endorsement, as revealed in the IRMI article, is to remit professional liability exposure to the service provider's professional liability carrier. The general liability carrier avoids double coverage by excluding that risk from its policy, and the insured cannot alter the insurers' exposures after the fact by changing the way in which it subcontracts professional and non-professional work.

To recapitulate the rule as we see it: Endorsement No. 9, excluding coverage of losses caused by "the rendering of or the failure to render any professional services," including "[t]he preparation or approval of ... designs" and "engineering services," unambiguously excludes coverage of a loss caused by the rendering of a professional engineering service, regardless of whether it is performed by a firm in the course of providing related non-professional work. The industry practice of subcontracting both design and construction responsibilities to a single subcontractor may complicate the determination of liability, but it does not make the Endorsement ambiguous.

### III.  CONCLUSION

We reverse the district court's legal conclusion that the professional liability exclusion is ambiguous, and remand for the district court to find whether, as a matter of fact, the loss was caused by the rendition of a professional service, *viz.* the engineering of the sheeting and shoring system. Because the prejudgment interest and attorneys' fees issues are not relevant if the engineering did not cause the damage, we do not resolve those issues on the present appeal.

*So ordered.*