AMERICAN RED CROSS, Plaintiff,

v.

The TRAVELERS INDEMNITY COM-
PANY OF RHODE ISLAND, et al.,
Defendants.

Civ. A. No. 91–2175 SSH.

United States District Court,
District of Columbia.

March 23, 1993.

Sherry W. Gilbert, Robert H. Shulman, Howrey & Simon, Karen Shoos Lipton, Gen. Counsel, Edward L. Wolf, Associate Gen. Counsel, American Red Cross, Washington, DC, for American Red Cross.

Thomas R. Lotterman, Thomas R. Kline, Andrews & Kurth, Washington, DC, Kenneth B. Katz, Hoberman & Pollach, Hartford, CT, John J. Kerr, Jr., Melany R. Gray, David B. Smallman, Simpson Thacher & Bartlett, New York City, for Travelers Indem.

Robert E. Heggestad, Casey, Scott, Canfield & Heggestad, Washington, DC, for TransAmerica.

Douglas Sederholm, Richard Bortnick, White & Williams, Philadelphia, PA, Ed D'Andrea, Marlton, NJ, for CIGNA.

Nelson Deckelbaum, Deckelbaum, Ogens & Fisher, Washington, DC, Marian Hertz, Thomas Leonard, Sheft & Sheft, New York City, for 1st State Ins. Co.

M. Elizabeth Medaglia, Richard J. DeFeo, Jr., Jackson & Campbell, Washington, DC, Mark Cohen, McCormack & Epstein, Boston, MA, for Granite Ins. Co./Lexington Ins. Co.

Richard H. Gimer, Theodore A. Howard, Richard A. Ifft, Laurin H. Mills, Andrew B. Lustigman, Hopkins & Sutter, Washington, DC, for RLI.

Donald C. Allen, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Scottsdale.

James W. Greene, Bromley, Greene & Walsh, Washington, DC, for Eric Reins. Co.

S. Robert Sutton, N. Richard Janis, Janis, Schuelke & Wechsler, Washington, DC, for Sentry Ins./Dairyland Ins. Co.

David F. Grimaldi, Martell; Donnelly, Grimaldi & Gallagher, Washington, DC, Richard M. Shusterman, E. Douglas Sederholm, Barbara S. Zellner, Richard J. Bortnick, White & Williams, Philadelphia, PA, for Ins. Co. of North America.

Janice Gail Murphy, Steven M. Levine, Wilson, Elser, Moskowitz, Edelman & Dicker, Washington, DC, for Sedgwick James of Va, Inc.

OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant RLI's motion for partial summary judgment, defendant Travelers' motion for partial summary judgment, defendants Granite State's and Lexington's motion for partial summary judgment, defendants Sentry's and Dairyland's motion for partial summary judgment, defendant Scottsdale's motion for partial summary judgment, and the oppositions and replies thereto. These parties seek a determination as to the scope and meaning of the $1 million aggregate limit of liability and the $1 million "per occurrence" limit of liability contained in each of the contracts at issue between plaintiff and defendant Travelers.[1] Upon consideration of the entire record, the Court finds that the $1 million aggregate limit of liability is inapplicable to the HIV-contaminated blood claims. The Court also finds that because each act of distribution of contaminated blood constitutes a "single occurrence," the $1 million per occurrence limit of liability has not been exhausted. Although "findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis, in part because the case survives the rulings herein. *See* Fed. R.Civ.P. 52(a).

*Background*

Plaintiff American Red Cross seeks declaratory relief as to the obligations of its insurance carriers during the period of July 1, 1982, to July 1, 1985, in connection with HIV-contaminated blood claims filed against plaintiff. During that period, defendant Travelers, the primary insurer, had issued three consecutive one-year, primary-level comprehensive general liability policies to plaintiff. During this same period, defendant RLI had provided plaintiff with its next layer of insurance—three consecutive "umbrella" policies. In addition, for each of the years at issue, plaintiff had three layers of insurance above defendant RLI, provided by six to seven additional insurance carriers.

Prior to the fall of 1991, defendant Travelers had defended and indemnified plaintiff in HIV-contaminated blood cases under all three of the primary policies. In 1990, defendant Travelers informed plaintiff that because it was contractually obligated to provide only $1 million of coverage, its liability limits under the 1984–85 policy period had been exhausted and it intended to transfer the duty to defend to defendant RLI. Defendant Travelers claimed that the HIV-contaminated blood claims fell within either the "completed operations" or the "products hazard" provisions contained in the applicable policies, and thus that the claims were subject to an aggregate liability limit of $1 million. Alternatively, defendant Travelers contended that all of the claims combined constituted a "single occurrence," and therefore fell within the $1 million "per occurrence" liability limit contained in the policies at issue. Defendant Travelers informed plaintiff that because these limits had been exhausted for the 1984–85 policy year, it would continue to fund the defense and indemnification of claims falling within that policy only as "an accommodation" to plaintiff. On August 7, 1991, defendant Travelers formally advised plaintiff that, effective September 2, 1991, it would no longer defend claims for the 1984–85 policy period. Thereafter, on August 23, 1991, plaintiff filed this declaratory action.

1. Several of the parties also assert that defendant Travelers is precluded under the doctrines of waiver and/or estoppel from contending that its coverage obligations to plaintiff have been exhausted. Because the Court disposes of the case on other grounds, it need not address these issues.

On April 30, 1992, defendant RLI moved for partial summary judgment, seeking a declaration that defendant Travelers' duty to defend did not terminate upon payment of $1 million in settlement costs on plaintiff's behalf under the 1984–85 contract, and that defendant Travelers has a continuing duty to defend plaintiff pending the outcome of the declaratory judgment litigation. On June 10, 1991, defendant Travelers filed a motion for partial summary judgment asserting that because its liability limits have been exhausted, it no longer has a duty to defend claims arising under the 1984–85 policy period.[2] On July 19, 1992, defendants Granite State, Lexington, Sentry, Dairyland, and Scottsdale moved for partial summary judgment, asserting that neither the aggregate nor the per occurrence liability limits have been exhausted, and that defendant Travelers has a continuing duty to defend the HIV-contaminated blood claims for the 1984–85 policy year.[3] Thus all parties agree that, as a threshold matter, this Court must determine whether the aggregate limits of liability are applicable to the HIV-contaminated blood claims, and whether all of these claims together constitute a single occurrence.

## Discussion

■ A court should grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The issues before this Court concern the proper construction of certain provisions in the insurance contracts entered into between plaintiff and defendant Travelers. The construction and effect of such contracts is a matter of law to be determined by the Court. *Owens–Illinois, Inc. v. Aetna Casualty and Surety Co.*, 597 F.Supp. 1515,

1519 (D.D.C.1984) (citing 2 *Couch on Insurance* 2d § 15.3, at 116 (1984)).

■ Under District of Columbia law, the Court must interpret an insurance contract objectively, based on the language of the policy and the expectations that the insured reasonably could have formed on the basis of that language. *See Keene. Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1041 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 *reh'g denied*, 456 U.S. 951, 102 S.Ct. 2024, 72 L.Ed.2d 476 (1982); *Owens–Illinois*, 597 F.Supp. at 1522.[4] In determining the "objectively reasonable" reading of the policy, the Court must give effect to the policy's dominant purpose of indemnity. *Keene*, 667 F.2d at 1041; *Owens–Illinois*, 597 F.Supp. at 1522.

■ If the policy language is unambiguous, the Court must apply the plain meaning of the language used and should not consider extrinsic evidence as to how to interpret the policy. *See, e.g., Continental Casualty Co. v. Cole*, 809 F.2d 891, 896 (D.C.Cir.1987); *Chiriboga v. International Bank for Reconstruction & Dev.*, 616 F.Supp. 963, 969 (D.D.C. 1985). If the policy is ambiguous, however, the Court may consider evidence of usages and customs affecting the agreement to determine the parties' intent. *See Harbor Ins. Co. v. Omni Constr., Inc.*, 912 F.2d 1520 (D.C.Cir.1990).[5] Moreover, any ambiguity in the insurance contract must be construed in favor of the insured. *Id.* at 1522 (*citing Keene*, 667 F.2d at 1041).

The parties dispute the applicability of three contractual provisions—the "products hazard," the "completed operations hazard," and the "per occurrence" limits—to the HIV-

---

2. On August 25, 1992, defendant Travelers informed the Court that the $1 million liability limits of the 1982–83 contract and the 1983–84 contract have been exhausted and that it intends to tender claims falling under those contracts to RLI.

3. Plaintiff, defendant First State, and defendant Transamerica Premier also filed pleadings in support of defendant RLI's motion for partial summary judgment, and in opposition to defendant Travelers' motion for partial summary judgment.

4. All of the parties agree that District of Columbia law governs the interpretation of the insurance policies at issue.

5. Defendant Travelers' assertion that the law of the District of Columbia prohibits reference to extrinsic evidence in interpreting ambiguous insurance contract terms is based upon an incorrect interpretation of both *Keene* and *Owens–Illinois*.

contaminated blood claims. The Court addresses each of these provisions.

*Products Hazard*

■ Under the policies at issue, defendant Travelers' coverage obligations are exhausted once it has paid on behalf of plaintiff in excess of the $1 million aggregate limit for claims falling within the "products hazard" provision. The policies define "products hazard" as

> *bodily injury* and *property damage* arising out of the *named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs away from premises owned by or rented to the *named insured* and after physical possession of such products has been relinquished to others.

Travelers' 1984–85 Policy, Definitions (emphasis in original).[6] The term "named insured's products" is defined separately as "goods or products manufactured, sold, handled or distributed by the *named insured.*" *Id.* (emphasis in original).

■ At the time defendant Travelers and plaintiff entered into the contracts at issue, District of Columbia law defined blood as a "service" rather than a "product," and precluded the application of strict liability for transfusion-related bodily injury. *See Fisher v. Sibley Memorial Hosp.,* 403 A.2d 1130, 1134 (D.C.App.1979) ("Characterizing blood plasma as a product governed by strict tort liability is as unnatural as forcing a blood transfusion into the commercial sales mode."). The District of Columbia continues to preclude strict liability for injuries arising from blood transfusions. *See Kozup v. Georgetown Univ.,* 663 F.Supp. 1048, 1058–60 (D.D.C.1987), *aff'd in relevant part and vacated in part on other grounds,* 851 F.2d 437 (D.C.Cir.1988).

■ There does not appear to be any reason to define blood differently with regard to tort claims than with regard to the liability insurance covering those same claims. Thus the Court finds persuasive the cases holding

that "products hazard" coverage should be interpreted consistent with products liability law. *See, e.g., Green Constr. Co. v. National Union Fire Ins. Co.,* 771 F.Supp. 1000, 1004 (W.D.Mo.1991); *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.,* 17 Ohio App.3d 127, 17 OBR 225, 477 N.E.2d 1227, 1236 (1984); *Friestad v. Travelers Indem. Co.,* 260 Pa.Super. 178, 393 A.2d 1212 (1978). *See also* Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 416–32 (1971). Accordingly, the Court finds that blood is not a "product" within the clear and unambiguous terms of the products hazard provision, and thus that the aggregate limit of liability derived from this provision is inapplicable to the HIV-contaminated blood claims.

*Completed Operations Hazard*

■ A $1 million aggregate liability limit also exists for claims falling within the "completed operations hazard." The "completed operations hazard" is defined in defendant Travelers' policies as

> *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, **but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.*** "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of *the named insured* under the contract have been completed,
>
> (2) when all operations to be performed by or on behalf of *the named insured* at the site of the operations have been completed, or
>
> (3) when the portion of the work out of which the injury or damage arises has

---

6. The language of this provision, as well as the completed operations provision and the per occurrence provision, is identical in Travelers'

1982–1983, 1983–1984, and 1984–1985 contracts.

been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

Travelers' 1984–85 Policy, Definitions (emphasis in original).

 The Court finds this provision inapplicable to professional service contracts such as the contracts between plaintiff and the hospitals to which it provides blood. The plain language of this provision indicates that it is intended to apply to construction and maintenance work, such as work performed on the premises of others by contractors and subcontractors. See, e.g., Pacific Indem. Co. v. Linn, 766 F.2d 754, 764 (3d Cir.1985) (citing Friestad v. Travelers Indem. Co., 260 Pa.Super. 178, 393 A.2d 1212 (1978)) ("clause intended to cover businesses that perform contracts at premises other than their own"); CPS Chem. Co. v. Continental Ins. Co., 199 N.J.Super. 558, 489 A.2d 1265, 1270 (Law Div.1984), rev'd on other grounds, 203 N.J.Super. 15, 495 A.2d 886 (App.Div.1985) (stating that "[c]ommentators are in complete agreement that this exclusion refers to accidents caused by defective workmanship which arise after completion of work by the insured on construction or service contracts"); Southwest Wheel, Inc. v. Hartford Accident & Indem. Co., 1988 WL 82424, *4 1988 Ohio App. LEXIS 3217, *10 (Aug. 3, 1988) (provision applies only to accidents due to defective workmanship occurring after completion of work by the insured on a construction or service contract); General Ins. Co. v. Crawford, 635 S.W.2d 98, 102–03

(Tenn.1982) (provision not applicable to retail liquor store's sale of alcohol to a minor later involved in a traffic accident); Prosser Comm'n Co. v. Guaranty Nat'l Ins. Co., 40 Wash.App. 819, 41 Wash.App. 425, 700 P.2d 1188, 1192 (Wash.App.1985) ("an average businessman would reasonably assume [the completed operations hazard] relates to workmanship on manufactured products"). Accordingly, the Court finds that the HIV-contaminated blood claims do not fall within the scope of the unambiguous terms of the completed operations hazard, and thus that the $1 million aggregate limit is inapplicable to such claims.[7]

*Per Occurrence Limits*

 Defendant Travelers' policies contain a $1 million "per occurrence" limit. The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the insured." See Travelers' 1984–85 Policy, Definitions (emphasis in original). The contracts further provide that

> for the purposes of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

*Id.* Defendant Travelers contends that all of the HIV-contaminated blood claims together constitute a single occurrence.

The parties agree that the Court should examine the underlying circumstances that resulted in the claims, rather than the effect of each claimant's injury, to define a single occurrence. See Owens–Illinois, 597 F.Supp. at 1525 (citing Michigan Chem. Corp. v.

---

7. This result would not change if the Court held that the language of the "completed operations provision" was ambiguous as applied to HIV-contaminated blood claims. A court may consider extrinsic evidence to determine the objectively reasonable interpretation of an ambiguous insurance policy provision. See, e.g., Harbor Ins. Co. v. Omni Constr., Inc., 912 F.2d 1520 (D.C.Cir. 1990). Defendant Travelers' undisputed, five-year course of conduct in construing this provision as inapplicable to the HIV-contaminated

blood claims constitutes compelling evidence that neither plaintiff nor defendant Travelers intended this aggregate limit to be applicable to such claims. See, e.g., Scottsdale's Memorandum in Opposition to Travelers' Motion for Partial Summary Judgment, Ex. 5, 8, 6, and 12. Moreover, because any ambiguity in the insurance contract must be construed in favor of coverage, it is clear that this limit should not be applied here. See Harbor Ins. Co., 912 F.2d at 1522.

*American Home Assurance Co.*, 728 F.2d 374, 379–80 (6th Cir.1984)). "Using this analysis, the Court asks if there was but one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damages." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir.1982).

 Defendant Travelers argues that the underlying cause of the HIV-contaminated blood claims was plaintiff's general, negligent practice in handling HIV-contaminated blood. The facts do not support the suggestion that plaintiff engaged in a single, negligent practice that could be considered "one cause." Rather, plaintiff made many decisions with regard to its handling of the blood—whether to screen the donor, whether to test the blood, and whether to provide warnings to the recipient hospital. Each of these decisions independently may have affected whether bodily injury would result from a transfusion. Moreover, negligence with regard to screening, testing, or notification could not result in injury until a particular unit of contaminated blood was provided to an entity which would administer the transfusion. Thus, the Court declines to resort to the level of generality urged by defendant Travelers in applying the cause test. *See Norfolk & W. Ry. Co. v. Accident & Casualty Ins. Co. of Winterthur*, 796 F.Supp. 929 (W.D.Va.1992) (rejecting argument that plaintiff's negligence with respect to excessive noise in the workplace was the proximate cause of all of the hearing loss claims). Instead, the Court finds that the proximate cause of the injuries was the distribution itself of HIV-contaminated blood. *See, e.g., Michigan Chem. Corp.*, 728 F.2d at 383 (each misshipment of flame retardant separate occurrence); *Maurice Pincoffs Co. v. St. Paul Fire and Marine Ins. Co.*, 447 F.2d 204, 206 (5th Cir.1971) (each sale of contaminated birdseed separate occurrence); *Mason v. Home Ins. Co.*, 177 Ill.App.3d 454, 126 Ill. Dec. 841, 532 N.E.2d 526 (1988) (each sale of botulism-tainted food separate occurrence).[8] Accordingly, each act of distribution of contaminated blood constitutes an "occurrence" for purposes of applying the $1 million per occurrence limit.

### Conclusion

Neither the "products hazard" nor the "completed operations hazard" aggregate limit of $1 million is applicable to the HIV-contaminated blood claims. Moreover, because each act of distribution of contaminated blood constitutes a single occurrence, the per occurrence limit of liability has not been exhausted by the payment of $1 million in defense costs in a single policy year by defendant Travelers. Therefore, defendant Travelers has not demonstrated exhaustion of the policy limits. Defendant Travelers has a continuing duty to defend plaintiff, retroac-

---

**8.** The Court finds that cases holding that all injuries resulting from sales of a uniformly defective product constitute continuous and repeated exposure to a general condition are inapposite here. *See, e.g., Champion Int'l Corp. v. Continental Casualty Co.*, 546 F.2d 502 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) (sale of defective vinyl-covered paneling to 26 manufacturers one occurrence); *Stonewall Ins. Co. v. National Gypsum Co.*, 1992 WL 123144, 1992 U.S.Dist. LEXIS 7607 (S.D.N.Y. May 26, 1992) (sale of products containing asbestos one occurrence); *Owens–Illinois*, 597 F.Supp. 1515 (sale of products containing asbestos one occurrence); *Cargill, Inc. v. Liberty Mut. Ins. Co.*, 488 F.Supp. 49 (D.Minn.1979), *aff'd*, 621 F.2d 275 (8th Cir.1980) (sale of nutrient medium resulting in multiple batches of defective antibiotics one occurrence). Such cases are inapplicable because plaintiff did not distribute a uniformly defective or hazardous product; only a portion of the distributed blood was contaminated. *See Dow Chem. Co. v. Associated Indem. Corp.*, 727 F.Supp. 1524, 1529–31 (E.D.Mich. 1989). Moreover, the holdings in these cases were based on a finding that absent a single occurrence construction, the insured would be deprived of the coverage for which it had bargained. *See, e.g., Stonewall*, 1992 WL 123144 at *13, 1992 U.S.Dist. LEXIS at *39 (multiple occurrence result would allow "insurers to escape the responsibilities which they obligated themselves to shoulder"); *Owens–Illinois*, 597 F.Supp. at 1527 (because a multiple occurrence interpretation "would effectively emasculate the coverage" purchased by plaintiff, single occurrence interpretation maintains the insured's reasonable expectations). Such a result-oriented approach is appropriate here only if the per occurrence language is ambiguous as applied to the HIV-contaminated blood claims. If the Court were to find the language of the per occurrence provision ambiguous as applied here, because the single occurrence interpretation would effectively deny coverage to plaintiff, it is the multiple occurrence interpretation that is consistent with the parties' reasonable expectations.

tive from September 2, 1991, until it can demonstrate that plaintiff's underlying claims fall outside the scope of coverage of the insurance policies. *See Independent Petrochemical Corp. v. Aetna Casualty and Surety Co.,* 654 F.Supp. 1334, 1345–46 (D.D.C. 1986). An appropriate Order accompanies this Opinion.

## ORDER

For the reasons state in the Court's accompanying Opinion, it hereby is

ORDERED, that defendant Travelers' motion for partial summary judgment is denied. It hereby further is

ORDERED, that the motions of defendants RLI, Granite State, Lexington, Sentry, Dairyland, and Scottsdale for partial summary judgment are granted.

SO ORDERED.