INDIANA GAS COMPANY, INC., Richmond Gas Corporation d/b/a Indiana Gas Company, Inc. and Terre Haute Gas Corporation d/b/a Indiana Gas Company, Inc., Plaintiffs,

v.

AETNA CASUALTY & SURETY COMPANY, Connie Lee Insurance Company, Continental Casualty Company, Continental Insurance Company, Greenwich Insurance Company, Home Insurance Company, Certain Underwriters At Lloyd's, London and Certain London Market Insurance Companies, North River Insurance Company, Ranger Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, and the Travelers Company, Defendants.

No. 1:95–CV–101.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

---

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Plaintiffs.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty and Surety Company, Detroit, MI, for Aetna Casualty & Surety Company.

Thomas W. Yoder, Miller Carson Boxberger and Murphy, Fort Wayne, IN, Patrick Cremin, Michael J. Sehr, Audrey S. Hanrahan, Jerome J. Duchowicz, Haskell and Perrin, Chicago, IL, for Continental Casualty Company, Continental Ins. Co., Greenwich Ins. Co.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for Home Ins. Co.

Dennis F. Cantrell, Bingham Summers Welsh and Spilman, Indianapolis, IN, Erik H. Aldeborgh, Boston, MA, for Liberty Mutual Insurance Company.

Michael D. Ramsey, James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Kandice L. Kilkelly, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Ins. Co.

Kenneth W. Biermacher, Dallas, TX, for North River Insurance Company.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell, LTD., Chicago, IL, for Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Mary Kay Reeder, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines.

Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Karen H. Flax, Robert C. Johnson, Sonnenschein Nath and Rosenthal, Chicago, IL, for The Travelers Indem. Co.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the Court on Aetna Casualty and Surety Company's July 10, 1996 "Motion for Partial Summary Judgment on the Issues of Number of Occurrences and Aggregates." Plaintiffs responded to that motion on July 31, 1996, to which Aetna replied on August 9, 1996. For the following reasons, the motion for summary judgment will be denied on the issue of the number of occurrences and granted with respect to the issue of aggregates.

### Factual Background

For present purposes, the relevant facts may be summarized thusly: In 1945, Indiana Gas Company, then named Indiana Gas and

Water Company [1] was formed as a subsidiary of the Public Service Company of Indiana. When Indiana Gas was first formed, it acquired certain assets from the Public Service Company of Indiana including manufactured gas plant sites at Bedford, Greencastle, Huntington, Lafayette, Seymour, and Shelbyville. Indiana Gas later acquired the manufactured gas plant sites at Marion, Richmond, and Terre Haute from the Central Indiana Gas Company.

The foregoing manufactured gas plants produced gas during the following periods: Bedford, from 1900 to 1940; Greencastle, from 1886 to 1930; Huntington, from 1883 to 1926; Lafayette, from 1852 to 1937; Marion, from 1912 to 1930; Richmond, from 1855 to 1960; Seymour, from 1866 to 1931; Shelbyville, from 1925 to 1946; and Terre Haute, from 1886 to 1930. The manufactured gas process generated a variety of residuals and by-products including tar, ammonia liquor, coke ash, clinker, lamp black, spent oxides, tar emulsions and cyanides and there was onsite disposal of such residuals and by-products. Certain of the substances contained in the residues and by-products caused damage to soil and groundwater.

Aetna issued policies of insurance to Indiana Gas for the periods 1967 to 1977. The policies from 1967 to 1973 contained the following definition of "occurrence":

> Occurrence means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

In the policies from 1973 to 1977, the definition of "occurrence" was as follows

> Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The policies also contained the following limitation of liability

> For the purposes of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one occurrence.

Each Aetna policy listed an occurrence limit of $300,000 and an aggregate limit of $500,000, although plaintiffs contend that the policies were not clear and unambiguous in this regard.

## Application of Law

As indicated at the outset, Aetna has moved for partial summary judgment with respect to the issues of number of occurrences and aggregates. After a review of the standards governing summary judgment, the parties arguments will be considered.

### A. Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re*

1. Indiana Gas and Water Company Changed its name to Indiana Gas Company, Inc. in 1967.

*Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at

249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## B. *Number of Occurrences*

Aetna has moved for partial summary judgment contending that there was but one occurrence. In its brief, Aetna frames the issue on this score as follows: "If this Court should find an occurrence has taken place (and it should not so find), then Aetna seeks partial summary judgment declaring that there has only been a single occurrence for all of the policies combined. That single occurrence—the operation of the manufactured gas plants at issue—confines Indiana Gas's claim for property damage to a single limit of liability for one occurrence." (Rec. 381, p. 13). Plaintiffs, of course, contend that there was more than one occurrence.

Occurrence was described in the oft-cited decision of *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56 (3rd Cir.1982) as follows:

> The general rule is that an occurrence is determined by the cause or causes of the resulting injury. The majority of jurisdic-

tions employ the cause theory. Under this analysis the court asks if there was but one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damage.

*Id.* at 61 (citations omitted). While such a "rule" might appear straightforward, it is not susceptible to wooden application, as evidenced by the present parties' citation to apparently analogous situations leading to seemingly contrary results. Although the parties discuss numerous cases and contrast and distinguish the same,[2] for present purposes, two of those cases are worthy of some discussion.

Among others, Aetna relies on *PPG Industries v. Evanston Insurance Co.*, No. 85–1387 (W.D.Pa.1994) wherein the court addressed the number of "impairments" under certain environmental policies for contamination at 118 waste disposal sites caused by the policyholder. The court determined that, consistent with authority interpreting the term occurrence, "the cause of the environmental damage and ... the impairment was the single act of [the policyholder] adopting the policy of disposing of its chromium mud offsite, and not each act of dumping off-site." *Id.* at p. 59. Thus, *PPG* can be read broadly to support the position that where a company makes a decision to engage in a particular course of conduct, that decision constitutes the occurrence.

Conversely, in *American Red Cross v. Travelers Indem. Co.*, 816 F.Supp. 755, 761 n. 8 (D.D.C.1993), a case relied upon by plaintiffs, defendant insurance company argued that plaintiff's general negligent practice in handling HIV-contaminated blood was the underlying cause of numerous blood claims and that, therefore, the plaintiff engaged in a practice which constituted one occurrence. The court, however, "decline[d] to resort to the level of generality urged by defendant Travelers in applying the cause test," *id.* at 761, and instead found that each act of distributing the contaminated blood constituted an "occurrence" since "plaintiff had made many decisions with regard to its handling of the blood," and since "negligence ... could not result in injury until a particular unit of contaminated blood was provided to an entity which would administer the transfusion." *Id.* Thus, the decision in *American Red Cross* can be read to support present plaintiff's position that the decision to manufacture gas or the process of manufacturing gas at assorted sites was not but one occurrence.

While this Court has analyzed all of the authorities cited by the parties, none of those decisions is particularly persuasive given the facts of this case. One case, cited by neither party, however, is of some help in resolving the presently pending motion as it relates to the number of occurrences.

In *E.I. du Pont de Nemours v. Admiral Insurance Co.*, 1996 WL 190764 (Del.Super. April 9, 1996), the court was presented with cross-motions for partial summary judgment on the issue of whether the property damage at a plant (Niagara) and at a landfill (Necco Park) resulted from a single occurrence or a number of occurrences.[3] Environmental

---

**2.** Some of the authorities cited by the parties, and others of similar ilk, have been described as "result oriented," *American Red Cross, infra,* 816 F.Supp. at 761 n. 8, in that the courts may have, at least to the extent that the language in the policy was ambiguous, attempted to avoid emasculating the coverage purchased by plaintiff by determining that there was either one occurrence or several occurrences. Thus, where a multiple occurrence interpretation would result in numerous deductibles effectively thwarting coverage, a single occurrence has been found to exist as in *Owens–Illinois, Inc. v. Aetna Casualty and Surety Co.*, 597 F.Supp. 1515, 1527 (D.D.C. 1984) (because a multiple occurrence interpretation "would effectively emasculate the coverage" purchased by plaintiff, single occurrence interpretation maintains the insured's reasonable expectations). Although this Court does not find

the "occurrence" language for present purposes to be ambiguous, if it were ambiguous, the conclusion that there were multiple occurrence would be in keeping with plaintiffs' reasonable expectations in purchasing the insurance policies at issue from Aetna.

**3.** The Court recognizes that the policy language at issue in *Du Pont* was somewhat different than that presented here in that it read "all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general condition existing at or emanating from one premises location shall be deemed one occurrence." Aetna's policy language is substantially the same save for the fact that it does not contain the phrase "existing at or emanating from one premises location." The difference in language, however, does not change this Court's

778

damage occurred at the plant and landfill due to the migration of various industrial wastes stored at those sites. The two sites in question were located less than two miles from each other and the plant produced the industrial wastes at both sites which were then distributed to distinct areas for disposal. In denying the motions for partial summary judgment, the court wrote:

> The real issues here are ones of material fact and they prevent granting Certain Defendants' Motion for Partial Summary Judgment on the Number of Occurrences or granting Du Pont's cross Motion for Partial Summary Judgment on the Number of Occurrences.
>
> The Niagara Plant and the Necco Park landfill are two separate premises locations. The existing record does not clearly delineate whether damage resulted from separate uninterrupted conditions at the landfill clearly distinguishable from the events at the plant which created the environmental wastes in the first instance. The trier of fact must determined whether there was "exposure to substantially the same general conditions existing at or emanating from one premises." A trial judges' best intentions and attempts to resolve factual issues at summary judgment in order to avoid an inefficient and time consuming trial are taken at substantial risk.

*Id.* at *4.

Similarly in this case, the trier of fact must determine whether "an accident, including continuous [or repeated] exposure to conditions, which results in bodily injury or property damage" occurred once or on more than one occasion. Involved in this suit are nine separate sites and facilities. According to the evidence (and the inferences to be drawn therefrom) now before the court, the manufactured gas plants in question utilized several different types of gas manufacturing processes at different times, using different structures and different materials.[4] Moreover, the plants were operated by different entities and were not under common ownership.[5] Certainly this court cannot conclude as a matter of law, as Aetna would have it, that plaintiffs' long-term business practices in operating its MGP sites caused a continuous or repeated exposure to substantially the same condition.[6] Accordingly, the motion for summary judgment on the issue of the number of occurrences will be denied.

### C. *Aggregate Limits*

■ Aetna has also moved for summary judgment on the issue of the aggregate limits of its policies. On this score, it is defendant's position that "Indiana Gas' property damage claims are subject to the stated aggregate limits for property damage in each Aetna Policy." (Def.Br. p. 13). Plaintiffs on the other hand contend that there are no limits on the number of occurrences, that each occurrence is a separate event entitling them to coverage up to the policy limits, and hence there are no aggregate limits.[7]

"An occurrence limit is the maximum amount the insurer will pay for a single event, while an aggregate limit is the maximum amount the insurer will pay for all events that occur within a policy period." *International Surplus Lines v. Fireman's Fund Ins.*, 998 F.2d 504, 505 (7th Cir.1993).

view that there are genuine issues of material fact which preclude summary judgment on the number of occurrences.

**4.** For example, the Lafayette Gas Light Company which began operating the Lafayette MGP in 1852 utilized a coal carbonization process to manufacture gas. The Marion MGP, operated by Central Indiana Gas Company did not commence operations until 1913 and utilized a carburetted water gas process.

**5.** In fact, Indiana Gas never operated most of the plants in question.

**6.** Interestingly, in a case involving the same "continuous or repeated exposure" language,

Aetna took the opposite position in *Owens–Illinois, supra* arguing that there were multiple occurrences under the policy. That case dealt with exposure to asbestos and Owen–Illinois sought coverage arguing that all asbestos-related personal injury alleged by the claimants was caused by a single occurrence.

**7.** Because the parties' briefs were not entirely clear on this issue, the Court held a telephonic conference with the parties on September 27, 1996, wherein Indiana Gas stated that it was its belief that there were no aggregate limits under the policies.

"Ordinarily, when an insurer's payments reach the aggregate limit set by its policy, the insurer's obligation to pay claims ends and the policy is said to be 'exhausted.'" *Id.*

In the present matter, the declaration sheets for the periods 10/67 through 10/74 (seven policies) indicate on their faces that with respect to Comprehensive General Liability Insurance (CGL), there was bodily injury liability insurance in the amount of $300,000 per occurrence and $300,000 aggregate. Likewise there was property damage liability insurance of $300,000 per occurrence and $300,000 aggregate.

With respect to those policies, it is clear to the Court that there is a $300,000 limit per occurrence as well as a like amount for an aggregate total. In fact, this Court was presented with a very similar issue in *Insurance Corp. of America v. Dillon Hardamon & Cohen*, 725 F.Supp. 1461 (N.D.Ind.1988) which dealt with the issue of an aggregate limit in the context of a claims-made professional liability policy. The declaration page indicated that there was a $1 million limit per occurrence and $1 million limit in the aggregate:

> The language '$1,000,000.00 (Aggregate),' found on the declarations page *directly under* '$1,000,000.00 (Per Occurrence).' modifies the $1,000,000.00 (Per Occurrence) language. Without this language the policy would provide $1,000,000.00 per occurrence, for an unlimited number of occurrences; leaving no cap on the insurer's total exposure to liability. With this language, the insurer's total exposure is $1,000,000.00 per policy year regardless of the number of claims and occurrences.

*Id.* at 1466 (italics in original).

Similarly, in this case, the declaration page for the policies covering the years 1967 to 1974 indicates that there is a $300,000 aggregate for property damage and that language is directly across from the language to the effect that there is a limit of $300,000 per occurrence. In this Court's view, in accord with *Dillon*, that means that Aetna's total exposure is $300,000 per policy year regardless of the number of occurrences.

■ The policies for the period 10/74 through 10/77 (three policies) are somewhat different. According to the declaration sheets for those policies, there is bodily injury liability insurance in the amount of $500,000 per occurrence and $500,000 aggregate. The following line lists limits for property damage—in the first policy this is listed as "NIL" per occurrence and "NIL" aggregate; in the following years, it is listed as "INCL" per occurrence and "INCL" aggregate.[8] Each policy also included, however, an endorsement which read:

> The limit of liability stated as aggregrate' [sic] of Sec. III. *Limits of Liability for the CGL part* is the total limit of the Company's liability for all damages arising out of property damage, caused by ownership, maintenance, or use of the premises or operations ratable in accordance with the manual of manufacturers and contractor liability insurance in use by the company.

Clearly, these policies too contemplated an aggregate limit. The endorsement contemplated an aggregate "for all damages arising out of property damage." Similarly, the declaration sheet contemplated an aggregate limit which was equal to the per occurrence limit, as evidenced by "NIL" or "INCL" appearing in both columns just as the $300,000 had appeared in both the aggregate and per occurrence columns in prior years.[9] While there may be some dispute as to what those precise figures are, plaintiffs have failed to establish the existence of a genuine issue of material fact as to whether or not the policies set aggregate limits. Thus, the Court finds that the Aetna policies at issue in

**8.** During the course of the telephone conference, Aetna indicated that this language means that the amount of coverage for property damage under the CGL was the same amount as that for bodily injury, an assertion which was not contradicted by plaintiffs.

**9.** According to the unrebutted affidavit of Clinton N. Greene submitted by the defendant, there was $500,000 per occurrence and $500,000 aggregate insurance for property damage during the 1974–1977 policy years. Whether that number is correct is not the critical issue before the Court. The issue before the Court is a legal one and that is whether the policies had aggregate limits, whatever the amount.

the present motion for summary judgment had aggregate limits for each policy year.[10]

### Conclusion

On the basis of the foregoing, Aetna Casualty and Surety Company's July 10, 1996 "Motion for Partial Summary Judgment on the Issues of Number of Occurrences and Aggregates" is GRANTED IN PART and DENIED IN PART. It is DENIED on the issue of the number of occurrences and GRANTED with respect to Aetna's assertion that each policy contained aggregate limits.

10. Subsequent to the telephone conference on September 27, 1996, this Court received, on September 30, 1996, a letter from counsel for Aetna which included declaration sheets and the " 'aggregate' endorsements" (the latter of which were not submitted with materials initially supplied in support of the motion for summary judgment) for the policy years of 1974 through 1977. Although this Court will not rely on those belated filings, the sheets listing the " 'aggregate' endorsements' " support the conclusion that there were aggregate limits with respect to each policy. The latest submissions indicate that the limits of liability for the CGL for the period from 10–1–74 to 10–1–75 was $500,000 each occurrence; $500,000 aggregate operations; $500,000 protective; $500,000 aggregate contractual; and $500,000 aggregate products. For the following year, the limits were the same except that the aggregate products limit was left blank. For the period 10–1–76 to 10–1–77, the Comprehensive General Liability Insurance policy listed the limits of liability as $500,000 for each occurrence and $500,000 aggregate.