**INTERNATIONAL SURPLUS LINES INSURANCE COMPANY,**
Defendant–Appellant,

v.

**FIREMAN'S FUND INSURANCE COMPANY, d/b/a Associated Indemnity Corporation, Plaintiff–Appellee.**

No. 92–1953.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 25, 1993.

Decided July 8, 1993.

John T. Wardrope, Sandra Young (argued), Courtney Ann Bobosky, Purcell & Wardrope, Chicago, IL, for International Surplus Lines Ins. Co.

Philip C. Stahl (argued), Jay R. Hoffman, Grippo & Elden, Chicago, IL, for Fireman's Fund Ins. Co.

Before CUDAHY and FLAUM, Circuit Judges, and MIHM, Chief District Judge.*

FLAUM, Circuit Judge.

International Surplus Lines Insurance Company ("ISLIC") provided reinsurance for a portion of Fireman's Fund Insurance Company's potential liability under certain primary insurance policies issued to The Dow Chemical Company. ISLIC appeals from a jury verdict that its reinsurance automatically reinstated, just as Fireman's Fund's primary policy limits did. Because the district court properly allowed a jury to decide the question of the parties' intent regarding ambiguous contract provisions, we affirm.

## I.

For nearly twenty years, Fireman's Fund insured The Dow Chemical Company under a series of general liability policies. The Dow policies relevant to this case provided for $2.5 million occurrence limits and five separate $2.5 million annual aggregate limits of liability, one for personal injury and the others for four types of property damage. An occurrence limit is the maximum amount the insurer will pay for a single event, while an aggregate limit is the maximum amount the insurer will pay for all events that occur within a policy period.

Ordinarily, when an insurer's payments reach the aggregate limit set by its policy, the insurer's obligation to pay claims ends and the policy is said to be "exhausted." Dow, through its insurance broker Marsh & McLennan, sought to protect itself from the risk of exhausted coverage by contracting with Fireman's Fund for automatic reinstatement, or replacement, after exhaustion. In the event that Fireman's Fund's payments for covered claims reached the aggregate limit of its policies, the policy limits would automatically reinstate for an additional premium. The 1970 Dow policy provided for a negotiated premium while the 1974 policy set the reinstatement premium at 25% of the fixed-cost premium.

Beginning in 1970, Carl Friedewald, Fireman's Fund's chief underwriter on the Dow account, opted to purchase reinsurance for any covered loss over $500,000 from General Reinsurance Company ("Gen Re") and pass on the cost as part of the overall premium Fireman's Fund charged Dow. In 1972,

---

* The Honorable Michael M. Mihm, Chief Judge for the Central District of Illinois, sitting by designation.

Marsh & McLennan discussed with Friedewald the possibility of replacing Gen Re with a less expensive reinsurer in order to save Dow money. Friedewald agreed, subject to Fireman's Fund's approval and the other reinsurer's acceptance of the same general terms including the automatic reinstatement provision. Marsh & McLennan approached Home Insurance Company and ISLIC, both already involved in Dow's insurance program as excess insurers. Eventually, Marsh & McLennan obtained reinsurance from both companies. ISLIC agreed to cover 37.5% of Fireman's potential liability to Dow, while Home Insurance was responsible for the remaining 62.5%.

The negotiations through which ISLIC became a partial reinsurer were conducted by Jack Hernandez of ISLIC and John Anderson of Marsh & McLennan. Fireman's Fund did not participate directly. Anderson testified at trial that he knew about the automatic reinstatement provisions in the primary policy and intended that ISLIC would be subject to all of the underlying policy provisions. All parties agreed that ISLIC received and reviewed the primary Dow policy before providing reinsurance. ISLIC's intent regarding reinstatement had to be proven by circumstantial evidence, because Hernandez died almost ten years before the trial. Philip Piety, a former ISLIC vice-president who was involved with the 1974 renewal, did not recall what transpired regarding reinstatement.

ISLIC issued two reinsurance certificates to Fireman's Fund, one in 1972 and one in 1974. Both included a standard, pre-printed provision, known in the industry as a "follow-the-form" or "follow-the-fortunes" clause, which provided that ISLIC's liability would follow that of Fireman's Fund and "except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions" of Fireman's Fund's liability under its policy with Dow. The 1972 certificate stated ISLIC's liability somewhat cryptically in Item 4:

37.5% OR $750,000. PART OF 100% OR $2,000,000. EACH OCCURRENCE BODILY INJURY AND/OR PROPERTY DAMAGE LIABILITY COMBINED AND/OR WORKMEN'S COMPENSATION AND/OR EMPLOYER'S LIABILITY IN EXCESS OF $500,000 EACH OCCURRENCE.[1]

Item 2, titled "Details of Reinsured Company's Policy: Policy Limits and Application," states:

Personal injury liability and/or workmen's compensation and/or employer's liability $500,000. Each person, $2,500,000 each occurrence and in the aggregate and property damage liability $2,500,000 each occurrence and in the aggregate.

The 1974 certificate, covering the new 1974 primary Dow policy, contained essentially the same terms. Item 4, however, no longer included workmen's compensation or employer's liability.

In the late seventies, Dow filed extensive claims under its primary policies with Fireman's Fund. A claim under the 1970 policy led to a disagreement over an acceptable amount for the negotiated premium, which developed into litigation between Dow and Fireman's Fund. Eventually a federal court in Michigan determined an appropriate premium. Gen Re and Fireman's Fund settled their related dispute over the effect of the reinstatement provision. After Fireman's Fund paid a different property damage claim, one of the property damage aggregates in the 1974 policy was exhausted. Pursuant to the reinstatement provision, the policy automatically reinstated. Fireman's Fund turned to its reinsurers for payment under their contracts, with limited success. Home Insurance agreed to reinstate its reinsurance for an additional 25% premium, following the primary policy terms. ISLIC also agreed to this formula in 1980, but when the aggregate limits were exhausted for a second time, ISLIC balked at further reinstatement. This litigation ensued, as the parties sought a declaration of ISLIC's liability under its reinsurance certificates.

---

1. At Anderson's request, ISLIC changed the original provision by issuing Endorsement 1 which deleted the words "and in the aggregate" and added the workmen's compensation and employer's liability to Item 4.

Both ISLIC and Fireman's Fund moved for summary judgment, asserting that the policy provisions were unambiguous. ISLIC argued that its maximum aggregate liability was $750,000 and that its insurance did not reinstate. Fireman's Fund, on the other hand, argued that no aggregate limit is set by the reinsurance certificates and that ISLIC is obligated under the "follow-the-form" clause to reinsure any reinstated limits. The district court denied both motions, determining that the policy provisions were ambiguous and therefore could not be interpreted as a matter of law. At the close of evidence at trial, the district court denied ISLIC's motion for a directed verdict and took Fireman's Fund's motion for judgment under advisement. A jury found that ISLIC's reinsurance contracts followed the terms, including the automatic reinstatement provision, of the primary policies between Fireman's Fund and Dow. The jury verdict specifically noted that the reinsurance certificates contained no aggregate limit nor any exception to the reinstatement provision.

### II.

ISLIC argues that the district court erred in failing to grant its motion for a directed verdict. "On review of motions for directed verdict, this court must consider whether any evidence exists upon which a jury could properly proceed to a verdict, taking all inferences in favor of the nonmoving party." *Bay State Milling Co. v. Martin,* 916 F.2d 1221, 1226 (7th Cir.1990). "It is well-settled in this circuit that a jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict." *Id.* (citations and internal quotations omitted).

At trial Fireman's Fund presented strong, uncontroverted evidence of its own intent regarding the reinsurer's acceptance of the reinstatement term in the primary policy. Friedewald testified that Fireman's Fund intended its initial reinsurer, Gen Re, to rein-

sure any reinstated primary policy limits. Tr. 78, 80. When Dow's broker expressed an interest in replacing Gen Re, Friedewald told Marsh & McLennan that any replacement would have to be on the same basis, including reinsuring any reinstated aggregate limits. Tr. 87–88. In 1973, during the negotiations over setting a formula reinstatement premium of 25%, Friedewald told Marsh & McLennan that he would only agree to the formula if the reinsurers also agreed. Tr. 94.

Unsurprisingly, Fireman's Fund did not produce a witness from ISLIC who testified that ISLIC intended its reinsurance to reinstate, just as the primary insurance did. However, it did present circumstantial evidence that supported its position concerning ISLIC's intent. Anderson testified that, when he met with an insurance company's representatives to discuss whether they would accept a risk, he routinely[2] brought a copy of the policy and pointed out any unusual provisions in the policy.[3] Tr. 175–76, 178. Fireman's Fund introduced a copy of the 1970 Dow policy, including the automatic reinstatement provision, discovered in ISLIC's files. Anderson also testified that he knew Fireman's Fund required reinsurance of reinstated limits and that that is what he intended to negotiate. Tr. 186. After receiving ISLIC's 1972 reinsurance certificate, Anderson contacted ISLIC and procured amendments to Item 4, by way of an endorsement. The revisions included removing any reference to an aggregate limit. Tr. 192–195. Furthermore, Anderson testified that the only difference between the operation of the automatic reinstatement provision in the two Dow policies was the computation of the premium. Tr. 209.

Perhaps the strongest evidence of ISLIC's intent comes from contemporaneous writings, incorporated into facts agreed to by both parties and read to the jury. One agreed fact stated that in 1973 Anderson spoke to Philip Piety of ISLIC, and that Anderson's

---

**2.** ISLIC failed to object to Anderson's testimony on the basis of his alleged lack of experience with reinsurance at trial, and thus has waived any objection on that basis.

**3.** A stipulated fact read to the jury noted ISLIC's practice of reading all the fine print of a manuscript, or customized, policy in order to detect any potential problems. The 1970 Dow policy, including the automatic reinstatement provision, was a manuscript policy. Tr. 177.

contemporaneous notes of the conversation document Piety's agreement "to the 25% figure for automatic reinstatement of the reinsurance to go along with Fireman's Fund reinstating aggregate." Tr. 201. Another agreed fact describes a letter sent from Anderson to Piety in 1973, confirming that ISLIC's reinsurance follows "all the terms and conditions of the Fireman's Fund ... policy, including a provision for an automatic reinstatement of aggregate limits in the event that the Fireman's Fund aggregate limit is exhausted for an additional premium of 25 percent...." Tr. 205–06.

Finally, Fireman's Fund offered evidence of the parties' subsequent course of dealing to show that ISLIC intended to reinsure any reinstated aggregates. Undisputed evidence showed that, in 1980, Fireman's Fund notified ISLIC that one of the aggregate limits in the 1974 Dow policy had been exhausted and had reinstated. ISLIC reinsured the reinstated aggregate limit and collected the 25% reinstatement premium, without objection. Taken together, with all inferences for Fireman's Fund, the evidence is more than sufficient to support a jury verdict in Fireman's Fund's favor. Therefore, it was not error to deny ISLIC's motion for a directed verdict.

### III.

▮▮▮ Next, ISLIC argues that the district judge improperly excluded evidence at trial. We "review a claim that a district court erred in ... excluding evidence for an abuse of discretion, giving the district judge great deference." *United States v. Wilson*, 973 F.2d 577, 580 (7th Cir.1992) (citations omitted). The district court prevented ISLIC from putting into evidence Gen Re's position on reinstatement in the litigation between Fireman's Fund and Dow. The trial court excluded the evidence under Federal Rule of Evidence 403 because, while marginally relevant, the testimony would be confusing and misleading to the jury, and "would result in a trial within a trial...." Tr. 254–56. The district court also excluded as irrelevant the amount of the premium Fireman's Fund sought from Dow in that litigation.

ISLIC argues that the district court's rulings excluded critical evidence which, had it been admitted, would have prevented a reasonable jury from deciding in Fireman's Fund's favor. The district court correctly noted that Friedewald's testimony was limited to Fireman's Fund's intent regarding the Gen Re reinsurance, not Gen Re's intent. Tr. 156. Gen Re's intent was not at issue in this litigation. ISLIC maintains that Gen Re's litigation position would discredit Fireman's Fund's contention that it communicated to its reinsurers its requirement that the reinsurance cover reinstated limits. The offered evidence, however, does not show that Gen Re did not reinsure the reinstated aggregate limits, but merely that Gen Re took that position at some point in unrelated litigation. ISLIC did not offer a judicial determination about Gen Re's liability under its certificates or even offer the Gen Re certificates themselves. We defer to the trial court's discretionary decision that admitting only a statement that Gen Re disputed the reinstatement provision in unrelated Michigan litigation would have been unduly prejudicial and that to allow explanations and evidence to overcome the prejudice would have required a trial within a trial. As for the premium Fireman's Fund requested from Dow under the 1970 policy, the district court properly concluded that the evidence was irrelevant. ISLIC never raised an issue of any amount of a reinstatement premium it was owed under the 1972 certificate. The evidence is not probative of any relevant issue.

The judgment is

AFFIRMED.