**Arnold D. BERKELEY, Appellant,**

v.

**HOME INSURANCE COMPANY, Appellee.**

Nos. 94–7149, 94–7167.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 1995.

Decided Nov. 3, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Dec. 21, 1995.*

* Circuit Judge Tatel did not participate in the rehearing in banc order.

Richard I. Chaifetz, Columbia, MD, argued the cause for appellant/cross appellee Arnold D. Berkeley. With him on the briefs was Sherman L. Cohn.

Aaron L. Handleman and Jack A. Gould, Washington, DC, argued the cause and filed the briefs for appellee/cross appellant Home Insurance Company.

Before WALD, SILBERMAN and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

These appeals involve an attorney and the insurance company that issued him a professional liability insurance policy. When the company refused to defend the attorney against a counterclaim filed by his former client in an arbitrated fee proceeding, the attorney hired other counsel and ultimately prevailed in large part, recovering substantial additional fees from his former client, but was also ordered to remit 15% of his recovery to the client. The attorney subsequently sued the insurance company for breach of contract, seeking reimbursement of the costs of defending the counterclaim and other expenses, and for a declaratory judgment that the insurance company was obligated to indemnify him for the 15% ordered remitted to the client. The district court granted the attorney's motion for summary judgment on count one of the complaint, for reimbursement of expenses for defending against the counterclaim, but granted the insurance company's motion to dismiss count two, for reimbursement of the 15% remittal. The district court ordered the insurance company to pay the attorney slightly over four hundred thousand dollars plus prejudgment interest.

The attorney, Arnold D. Berkeley, appeals on the ground that the district court erred in calculating the amount of reimbursement under count one and in dismissing count two on the ground that the insurer was not liable for the 15% remittal under an exclusionary clause in the policy for "dishonest" conduct. The insurance company, Home Insurance Company, appeals the grant of summary judgment to Berkeley on count one in view of its request for additional discovery pursuant to Federal Rule of Civil Procedure 56(f) and its claim that there were material facts in dispute; it also appeals the reimbursement amount to the extent that the award included Berkeley's in-house counsel costs. We affirm the grant of summary judgment on count one and the dismissal of count two based on the provision in the exclusionary clause for "deliberately wrongful" conduct. We also affirm the reimbursement order except to the extent that the district court denied any recovery for costs associated with the former client's appeals of the arbitration panel's award.

## I.

In 1971 Berkeley began to represent Arizona Electric Power Cooperative, Inc. ("AEPCO") in matters relating to natural gas service provided to it by El Paso Natural Gas Company, an interstate pipeline. Berkeley agreed in the late 1970s to represent AEPCO in a tort and breach of contract action for damages against El Paso. AEPCO and Berkeley entered into a contingent fee agreement in January 1979 whereby Berkeley would receive a fixed fee plus a contingent fee equal to specified percentages of any actual recovery from El Paso; the agreement also contained an arbitration clause for resolution of all disputes.[1] The case was settled in December 1980, and El Paso provided substantial non-monetary benefits to AEPCO. In 1982, AEPCO and Berkeley amended the contingency fee agreement to provide that certain benefits received by AEPCO from El Paso were obtained in settlement of the damages claim, and AEPCO paid Berkeley a total of $2.75 million in contingent fees.

Although Berkeley received contingent fee payments from AEPCO from 1982 to 1991 with regard to certain of these non-monetary benefits, he maintained that AEPCO did not begin to benefit from certain other non-monetary benefits until the late 1980's and never paid him contingent fees with respect to those benefits. In May 1991, Berkeley initiated an arbitration proceeding in which he sought eventually more than $67 million in additional fees. AEPCO denied that it owed any fees and fired Berkeley as its lawyer.

AEPCO sued Berkeley and his firm for legal malpractice in the United States District Court for the District of Arizona in August 1991 because of Berkeley's continued representation of the City of Willcox, a former co-client with AEPCO. From at least 1989 until the time he ceased practicing law in 1992, Berkeley purchased professional liability insurance from Home. Home agreed

1. Section XIII provided that the agreement would continue in existence were either party to invoke arbitration to settle any disagreement about their respective rights and obligations.

to defend the lawsuit, which included an allegation of Berkeley's violation of canons of ethics by reason of conflicts of interest. In October 1991, AEPCO voluntarily dismissed this lawsuit without prejudice. Then, in March 1992, AEPCO filed a counterclaim against Berkeley in the fee arbitration proceeding alleging that Berkeley had violated his fiduciary duty to his client as a result, in part, of a conflict of interest due to his representation in litigation of the City, which had taken positions adverse to AEPCO.

The counterclaim requested that the 1982 amendment to the contingent fee agreement be declared null and void because of Berkeley's alleged fraud in procuring it, and that Berkeley return all contingent and non-contingent fee payments and be required to disgorge all fees paid since 1979 and all hourly legal fees since the agreement had expired in June 1981. In addition, the fifth and sixth prayers for relief sought to bar Berkeley from recovering additional fees from AEPCO under the contingent fee agreement and to reimburse AEPCO for its costs in defending the fee demand by reason of Berkeley's admission that it was excessive and his conflict of interest in representing the City after he was fired by AEPCO. Finally, the counterclaim sought for AEPCO such other measure of recovery as the arbitration panel thought appropriate. Berkeley tendered the counterclaim defense to Home. Home refused to provide a defense, contending that the only relief AEPCO sought was the return of legal fees, which was excluded from coverage under the policy. Berkeley arranged for the law firm of Steptoe and Johnson, which had defended him against AEPCO's legal malpractice lawsuit, to defend him against the counterclaim.

Following a hearing, the arbitration panel awarded Berkeley $9.221 million in contingent fees, but ordered him to remit 15% of the award to AEPCO in view of conduct that the panel determined was "below the level of propriety expected of a member of the Bar." [2] Home refused Berkeley's requests for reimbursement of the costs of his defense and the remittal amount. AEPCO went to court to have the arbitration panel's award vacated. The United States District Court for the District of Arizona confirmed the award in May 1993, rejecting AEPCO's argument that the court should adopt a public policy exception precluding disloyal attorneys from receiving compensation from the betrayed client, and finding, in any event, that AEPCO had failed to show an established "public policy barring the payment of legal fees earned more than seven years prior to the attorney's ethical transgressions." The Ninth Circuit affirmed on July 12, 1995. *Arizona Elec. Power Co–Op., Inc. v. Berkeley*, 59 F.3d 988 (9th Cir.1995).

Meanwhile, on February 9, 1993, Berkeley filed the instant lawsuit against Home alleging breach of contract in count one, and seeking a declaratory judgment for indemnification in count two.[3] Home filed a motion on April 15, 1993, to dismiss the complaint and Berkeley filed a motion for partial summary judgment on May 18, 1993. Home filed an opposition to the motion for summary judgment on June 21, 1993. On October 5, 1993, the district court held a hearing on the motions and directed the parties to file supplemental pleadings on three discrete issues. Berkeley filed its supplemental memorandum in support of partial summary judgment on November 4, 1993. On December 6, 1993, Home filed its supplemental opposition to summary judgment and a supplemental statement of material facts in dispute. Two days later it filed a notice to take

---

**2.** The arbitration panel found three instances of such conduct: (1) employing AEPCO's former general manager to assist in the preparation of the additional fee claim while continuing to represent AEPCO and without notifying AEPCO; (2) filing the arbitration demand for fees in excess of $67 million without first consulting with AEPCO; and (3) continuing to represent the City "in a litigation in which the City was attempting to hold [AEPCO's] gas supply hostage." Only the conflict of interest in representing the City after being fired by AEPCO was determined by the Bar Counsel of the District of Columbia to be a violation of the D.C. Rules of Professional Conduct.

**3.** Because AEPCO's appeal of the arbitration award was still pending in the Ninth Circuit when Berkeley filed his complaint in the instant case, Berkeley sought a declaration that Home would be liable to indemnify him if and when he had to pay the counterclaim award to AEPCO.

Berkeley's deposition, and the district court granted Berkeley's motion for a protective order on December 20, 1993. Thereafter, on January 26, 1994, the district court granted Berkeley's motion for partial summary judgment on count one and granted Home's motion to dismiss count two. After denying Berkeley's motion for clarification regarding recovery of costs for AEPCO's appeals of the arbitration panel award, the district court ordered Home to pay Berkeley $404,260.23 plus prejudgment interest. Both parties appeal, and our review is de novo. *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

## II.

Berkeley's appeal raises two main issues. First, he contends that the district court erred in ruling that Home could avoid liability for the 15% remittal to AEPCO because his conduct fell within the policy exclusion for "dishonest" conduct. He maintains that neither the conflict of interest involving the City nor the other conduct found improper by the arbitration panel is "dishonest" or "deliberately wrongful" conduct within the exclusion. Second, Berkeley contends that the district court erred in failing to award him additional reimbursement and attorneys fees in the instant case. Because there would be no occasion to address these contentions if Home's appeal succeeds, we address Home's appeal first.

### A. Home's appeal.

■ **1. Construction of policy.** Home contends that the relief AEPCO requested in the counterclaim against Berkeley was limited to the return of fees, which the policy did not require Home to defend. This argument is quickly disposed of. The policy required Home to defend Berkeley against "any claim ... seeking damages to which this insurance applies" and "[t]o pay ... all sums ... which the Insured shall become legally obligated to pay as damages ... by reason of any act, error, or omission in professional services rendered." The term "damages" is defined to mean "a monetary judgment or settlement and does not include ... the return of or

restitution of legal fees, costs and expenses arising therefrom." In concluding that Berkeley's breach argument was well taken, the district court correctly noted that:

> [t]he counterclaim includes demands not only for remission of the fees already paid but also for relief from any obligation to pay "additional fees." In addition, the counterclaim sought to require [Berkeley] to pay [AEPCO's] "attorneys fees in defending against [Berkeley's] excessive fee demand." Neither of these items may fairly be described as a claim for "the return or restitution of legal fees" as that phrase is used in the insurance contract.

Rejecting Home's further argument, the district court stated that "[a]n award relieving a party from an obligation to pay money does not differ in practical effect from an award of money damages. Thus, the client's request for relief from 'additional fees' sought 'a monetary judgment or settlement.'"

The district court's analysis is dispositive. *See American Home Assur. Co. v. Miller,* 717 F.2d 1310, 1312 (9th Cir.1983). Moreover, AEPCO's prayer for attorneys fees was not a request for "the return or restitution of legal fees" within the meaning of the contract. *See Weisberger v. Home Ins. Co.,* 76 Ohio App.3d 391, 601 N.E.2d 660, 663 (1991) (construing same exclusionary clause).

■ **2. Misrepresentation as a material disputed factual issue.** Home next contends that there was a material disputed fact whether Berkeley's insurance policy was voidable by reason of a misrepresentation in his renewal application. *See* D.C.Code Ann. § 35–414; *Jones v. Prudential Ins. Co.,* 388 A.2d 476, 481 (D.C.1978); *Hill v. Prudential Ins. Co.,* 315 A.2d 146, 147–48 (D.C.1974). In its supplemental Rule 108(h) statement of disputed material facts, Home asserted that Berkeley "knew of a potential professional liability claim against him when his firm made an affirmative representation that it knew of no such circumstance as could give rise to a potential claim against the firm in [the application and renewals and in] letter[s] to Administrative Associates, Inc." One of the letters in question was signed three days before Berkeley filed his arbitration proceeding. Home also argues that a 1988 letter to

Berkeley from AEPCO's former general manager, warning Berkeley to "be prepared for the explosion" should he contest his contingent fee, put Berkeley on notice that AEPCO would fire him if he made a fee claim against it. The district court, in its discretion, could properly reject Home's belated attempt to reopen its original opposition to the motion for summary judgment. *Cf. Liberles v. County of Cook,* 709 F.2d 1122, 1129 (7th Cir.1983).

Home first raised the misrepresentation issue in its supplemental opposition to Berkeley's summary judgment motion. Its supplemental opposition was filed on December 6, 1993, after the district court, during the October 5, 1993, hearing on the motions to dismiss and for summary judgment, instructed the parties to file supplemental briefs on three discrete issues.[4] This was more than six months after Berkeley filed his motion for summary judgment, and long after the time for filing an opposition and a Rule 108(h) statement of material disputed facts had expired. D.D.C. Rule 108(b). The supplemental opposition was not responsive in this regard to the district court's October 5 instructions. It was filed just before the district court was about to rule on the cross motions for summary judgment.

Nor can Home's untimely raising of a new issue be excused on the basis of a claim of newly discovered evidence, as Home argued to the district court. *Cf. United Mine Workers of Am. 1974 Pension v. Pittston Co.,* 984 F.2d 469, 476 (D.C.Cir.) (Fed.R.Civ.P. 60(b)), *cert. denied* — U.S. —, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993). Home had all of the records on which it relied in raising the misrepresentation claim in its supplemental opposition before it filed its original opposition to summary judgment on June 21, 1993. Berkeley submitted an undisputed affidavit that his counsel had offered as early as

March 1993 to make available to Home's counsel all of the arbitration proceedings documents and Home had not responded. Nor, apparently, did Home seek to obtain the documents on its own from the arbitration panel. Thus, not only was the evidence available to Home through Berkeley's offer, but the application and renewals and at least the May 21, 1991, letter in which Home claims Berkeley made a misrepresentation were in Home's possession.

**3. Rule 56(f).** Finally, Home contends that the district court erred in denying its request for time in which to conduct discovery to support its claim that there was a genuine issue of material fact whether Berkeley had made a material misrepresentation in his application, renewals, and letters.[5]

■ As the Supreme Court has noted, summary judgment should be entered "after adequate time for discovery." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, the Fifth Circuit holds that Rule 56(f) motions should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992) (citations omitted), *cert. denied,* — U.S. —, 113 S.Ct. 2340, 124 L.Ed.2d 251 (1993). Notwithstanding the usual generous approach toward granting Rule 56(f) motions, the rule is not properly invoked to relieve counsel's lack of diligence. *Id.* at 919. Were that allowed, the rationale underlying the summary judgment procedure would be undermined, as counsel belatedly devised new theories to delay resolution of long-pending dispositive motions. *See Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554 (citing Fed.R.Civ.P. 1). Home has failed to show reasons for its

---

4. The supplemental briefs were to address: (1) whether prayers five and six in AEPCO's counterclaim would impose liability on Berkeley which was not the disgorgement of legal fees; (2) any documentation available from prior proceedings to show the ingredients of the $9 million arbitration award; and (3) whether a conflict of interests is dishonest conduct under the policy.

5. Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

untimeliness. *Cf. Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 35 (1st Cir. 1995).

■ Nothing in the record suggests that Home confronted any difficulty in obtaining the information that it needed to develop its misrepresentation claim that would have prevented it from timely filing its opposition and Rule 108(h) statement. Home did not identify the reason that it was only "now" learning of the alleged misrepresentation. Indeed, it did not notice Berkeley's deposition until after it filed its supplemental opposition in December, 1993.[6] Furthermore, when Home filed its supplemental opposition, it had already received the arbitration proceeding documents. Home failed to advise the district court, by affidavit, of its continuing need for additional discovery at this late date. Under the rule, bare assertions of need will not suffice when the record reveals none. *Cf. First Chicago Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1380 (D.C.Cir.1988). Thus, we find no abuse of discretion by the district court in denying Home's Rule 56(f) motion for further discovery. *See Exxon Corp. v. FTC,* 663 F.2d 120, 129 (D.C.Cir.1980).

Accordingly, because the district court did not abuse its discretion by disallowing Home's untimely reopening of its opposition to summary judgment or by denying its Rule 56(f) motion, Home failed to proffer evidence on which a reasonable jury could find that Berkeley had misrepresented the state of his knowledge in the application, renewals and letters, and summary judgment was properly granted on count one of the complaint. *See Shields v. Eli Lilly and Co.,* 895 F.2d 1463,

1465 (D.C.Cir.1990) (citations omitted). We turn to the issues raised in Berkeley's appeal.[7]

### B. Berkeley's appeal.

■ **1. Remittal of 15% of arbitrated fee award.** Home successfully argued in the district court that an exclusion in the policy prevents Berkeley from recovering from Home the portion of the arbitration award ordered remitted to AEPCO. We review this question of law de novo. *Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Cuddy v. Carmen,* 762 F.2d 119, 123 (D.C.Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 597, 88 L.Ed.2d 576 (1985).

The policy contains an exclusion for:

> any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the Insured.

The district court concluded that "[i]mpropriety of a lawyer is or should be recognized as 'dishonesty' within the meaning of the exclusion provision." Berkeley maintains that the district court's finding of "dishonest" conduct was wrong because the arbitration panel did not make that finding, the Bar Counsel of the District of Columbia imposed the lightest possible sanction for the conflict of interest violation, and the cases hold that a conflict of interest is not fraudulent or dishonest conduct.[8]

---

6. Home stated in its supplemental opposition that it would be noticing depositions of Berkeley and members of his firm and, depending on the information in the depositions, might depose another firm member; the depositions would have been "directed not only at the issue of the application, but also to establish that [Berkeley] acted dishonestly and that his conduct was deliberately wrongful."

7. We address Home's contention regarding the award of in-house attorneys fees in Part II(B)(2)(e), *infra.*

8. Berkeley, however, cites only *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1370 (5th Cir.) (holding that constructive fraud claim does not fall within exclusion for claims arising from "fraudulent"

acts), *opinion clarified in other respects per curiam,* 832 F.2d 1378 (5th Cir.1987); *State v. Kopke,* 210 Kan. 330, 502 P.2d 813, 817 (1972) (holding in attorney disciplinary proceeding that conflict of interest violating code of ethics did not amount to fraud, dishonesty or moral turpitude); *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d 209 (Minn.1984) (holding that exclusion for fraud did not encompass constructive fraud because "[t]he mere breach of an ethical rule should not fall within the exclusion unless accompanied by 'dishonesty' or 'fraud' ") (citing Ronald Mallen & Victor Levit, *Legal Malpractice,* § 718 at 900 (1981)); *Sade v. National Sur. Corp.,* 203 F.Supp. 680, 684 (D.D.C.1962) ("dishonest" act within provision of surety bond requires "element of moral turpitude or want of integrity") (quoting *Commercial Banking Corp. v. Indemnity Ins. Co.,* 1 F.R.D. 380, 382 (E.D.Pa.

We need not decide whether the "improprieties" noted by the arbitration panel and the conflict of interest found by D.C.Bar Counsel constituted "dishonest" conduct within the meaning of the exclusionary clause. There is some supporting authority applicable to a member of the District of Columbia Bar. *Cf. Matter of Shorter*, 570 A.2d 760, 767–68 (D.C.1990); *see also FDIC v. Mmahat*, 907 F.2d 546, 552–53 (5th Cir. 1990), *cert. denied*, 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991). But, in any event, we do not think it can be seriously disputed that Berkeley's conduct falls within the policy exclusion for "deliberately wrongful" conduct.

District of Columbia Bar Disciplinary Rule 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Berkeley was hired by the City after being fired by AEPCO and on behalf of the City argued a position in litigation that was directly contrary to the interests of his former client. The City had a special status under federal regulations, whereby it was entitled to an uninterrupted gas supply from El Paso. AEPCO bought its gas through the City rather than directly from El Paso so that it too could receive the special benefits. After firing Berkeley, AEPCO attempted to separate itself from the City and buy gas directly from El Paso. ·Berkeley represented the City in opposing this action by AEPCO.

Berkeley's position before the arbitration panel and Bar Counsel was that although his firm had represented AEPCO in contract negotiations with the City, the firm "had not participated in the drafting or negotiation of the contract provision in question," which governed the right of the City to exercise or

withhold its consent in the event that AEPCO sought to purchase directly from El Paso. Bar Counsel rejected this interpretation of the disciplinary rule, stating that even if Berkeley's firm had not drafted the provision at issue, "[t]he application of the Rule does not depend upon the prior imparting of advice, but upon the subsequent representation of interests materially adverse to those of the former client in the same or substantially related matter." Bar Counsel also disagreed with Berkeley's view that his argument for the City—that it could object to AEPCO's dealing directly with El Paso—was not substantially related to his prior representation of AEPCO: "[t]hat position bore a direct and substantial relationship to the dealings among the three entities with which a significant portion of [Berkeley's] representation of AEPCO had concerned itself."

Notwithstanding the obligation to construe insurance contracts favorably to the insured and to construe exclusionary clauses narrowly, *see, e.g., Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C.Cir.1987); *Potomac Elec. Power Co. v. California Union Ins.*, 777 F.Supp. 968, 974–75 (D.D.C.1991), neither Berkeley nor this court can ignore the plain language of the disciplinary rule and the context of Berkeley's disregard of the rule. While some conflicts of interest undoubtedly present difficult and close questions, as Berkeley's ethics expert opined, the conflict described by Bar Counsel did not. To suggest that the direct purchase issues for AEPCO and the City were not substantially related would be to mock Rule 1.9. Whether AEPCO could purchase directly from El Paso without the City's consent was an issue that Berkeley addressed one way for his former client and another way after he was fired and proceeded to represent the City against the former client in litigation. The conflict of interest was clear to all entities that considered it,[9] including the district court here and, most importantly since Berkeley is a member of the District of

---

1940)), *aff'd per curiam*, 314 F.2d 286 (D.C.Cir. 1963).

9. The district court in Arizona assumed that the conflict existed and did not review the findings of the arbitration panel.

Columbia Bar, the D.C. Bar Counsel.[10] Bar Counsel did not equivocate in finding a violation of the Rule, and the imposition of a sanction necessarily implied that Berkeley's violation of the Rule was knowing and intentional. *See In re James,* 452 A.2d 163, 166 (D.C.1982), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983). Berkeley's own ethics expert, Professor Stephen Gillers, concluded that if Berkeley had advised AEPCO that it had the right under the 1985 service agreement with the City to become a direct customer of El Paso without any interference from the City, Berkeley's firm "should not oppose the former client in an action over the construction of a clause that the firm had previously construed for the client. This would be so even if the firm had not drafted the clause," and the firm must be disqualified. So blatant a violation can only be considered deliberate.

The conflict of interest violation did not occur in a vacuum. In his pleadings Berkeley described himself as an experienced regulatory attorney, concentrating in public utility regulatory matters before the Federal Energy Regulatory Commission ("FERC") (and its predecessor the Federal Power Commission). He began representing AEPCO in 1971 before the Commission in matters relating to natural gas service provided to it by El Paso. He drafted the contract by which AEPCO purchased El Paso power through the City, and jointly represented both parties thereafter. When AEPCO fired him, he had represented AEPCO and the City for more than a decade. He was, therefore, in a position to understand thoroughly their positions and interests with regard to uninterrupted access to El Paso power. The fact that

Berkeley's firm researched the conflict of interest issue cannot be dispositive; otherwise, a self-interested conclusion would deprive the "deliberately wrongful" conduct provision in the exclusionary clause of the policy of any reasonable meaning where there is a disciplinary rule violation. Because his advocacy of the City's interpretation of the service contract occurred after AEPCO denied that he was entitled to additional fees and fired him, and because the interpretation concerned a critical issue for both parties that Berkeley had addressed over the years, neither inadvertence nor simple negligence nor a mere "impropriety" is at issue. Were we to assume, for purposes of argument, that the violation of the disciplinary rule itself was merely negligent, the context shown by the record nevertheless warrants the conclusion that Berkeley's conduct in arguing a position adverse to his former client was deliberately wrongful.[11]

Berkeley's other argument, that the exclusionary clause is ambiguous and, construed most favorably to the insured, excludes coverage only for acts that are dishonest, fraudulent, criminal *and* wrongful, fares no better. His interpretation results in a strained reading of the clause and renders words superfluous: an act that is fraudulent or criminal is also wrongful. *See Combined Ins. Co. of Amer. v. McGillen,* 316 A.2d 854, 856 (D.C. 1974); *Boggs v. Motors Ins. Corp.,* 139 A.2d 733, 735 (D.C.1958); *American Home Assur. Co. v. J.F. Shea Co., Inc.,* 445 F.Supp. 365, 368 (D.D.C.1978). In addition, Berkeley's contention that Home was estopped from relying on the exclusionary clause fails for the reason stated by the district court, and

---

**10.** *See* D.C.Bar R. XI § 6(a)(2) and (3) (Bar Counsel has "the power and duty [t]o investigate ... [and] to dispose of all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of the Court, by dismissal or informal admonition or by referral of charges."); *id.* § 1(a) ("Persons subject to disciplinary jurisdiction [include] [a]ll members of the District of Columbia Bar").

**11.** In opining on the "propriety" of Berkeley's conduct, AEPCO's ethics expert, Professor Geoffrey C. Hazard, Jr., testified before the arbitration fee panel, in response to a hypothetical question by AEPCO's counsel, that:

I do have an opinion and it is based not only on the Rules of Professional Conduct but the rules of law that govern the lawyer's responsibility. These govern him in his civil relations apart from the prospect of discipline, and they also reflect recognized standards of practice.

The principle is that, having represented a client in a matter, whether alone or jointly, you may not thereafter undertake a representation adverse to the client in the matter in which you had represented him.

Professor Hazard cited in support "a classic case of attacking your own work, well known in the profession" where a professor drafted a will and after the testator died, participated in a legal attack on the will.

not confronted by Berkeley in his briefs on appeal. Unlike the insurers in the cases on which Berkeley relies,[12] Home does not contend that Berkeley's failure to perform a condition after Home refused the tendered defense justified its later refusal to indemnify; rather, Home invokes a circumstance that existed before its own breach of the contract. Berkeley's interpretation would extend the scope of bargained-for coverage. *See Union Trust Co. v. Continental Cas. Co.,* 194 F.2d 901, 902 (D.C.Cir.1952); *Boonton Handbag Co., Inc. v. Home Ins. Co.,* 125 N.J.Super. 287, 310 A.2d 510 (Ct.App.Div. 1973).

Finally, Berkeley's contention that the district court's decision would undermine indemnity coverage in every professional insurance policy because "virtually every act which a lawyer can commit which would sustain a finding of professional liability in some way violates the Rules of Professional Conduct," and thus "lawyers charged with malpractice [could] never look to the indemnity protection of their professional liability insurance" comes close to pure hyperbole. First, the court has long made clear that the duty to defend is broader than the obligation to indemnify. *See, e.g., Cole,* 809 F.2d at 898. An insurer who refuses to defend risks being held responsible for indemnification for the insured's defense costs over which it had no control; indeed, Home complains that Berkeley seeks reimbursement for attorney's fees based on excessively high hourly rates. Consequently, the prudent insurer will be unlikely to deny coverage under an exclusionary clause in the absence of clear evidence of its application, either by reason of blatant misconduct falling within the terms of the clause or a confirming source, such as a court or Bar Counsel. The courts, in turn, will look at the context of the intentional conduct evidenced by the disciplinary rule violation. *See* cases cited *supra* n. 8.

Second, there are some things that lawyers do that insurance companies will not insure against. At least in Berkeley's case the combination of the language of Rule 1.9, his professional expertise in a particular regulatory setting over a number of years in which he represented the parties' interests with respect to uninterrupted access, and the language of the exclusionary clause gave him fair warning. While we do not adopt a *per se* rule, holding that every violation of Rule 1.9 will constitute "deliberately wrongful" conduct, and we express no opinion on the remedy imposed by the arbitration panel,[13] Berkeley has not shown, in the absence of a reasonable interpretation of the exclusionary clause in his favor, why he should be allowed to avoid the language of the contract for which he bargained. Although the arbitration panel relied on two additional improprieties as a basis for liability, because it is sufficient under the policy that the counterclaim award "[arose] out of" conduct by Berkeley that was "deliberately wrongful," we need not decide if the other improprieties fall within the exclusionary clause.

For these reasons we conclude that Berkeley's conflict of interest falls within the "deliberately wrongful" conduct language of the exclusionary clause in the policy and that Home's motion to dismiss count two of the complaint was properly granted.

■ **2. Amount of award.** Berkeley also makes several challenges to the amount of the reimbursement award. We conclude that only his claim for reimbursement in connection with AEPCO's appeals of the arbitration panel award requires further consideration by the district court. *See Safer v. Perper,* 569 F.2d 87, 100 (D.C.Cir.1977).

a. Costs of AEPCO's appeals of the arbitration award. The district court ruled, in denying a motion for clarification, that Home was not required to pay for Berkeley's effort

---

**12.** *St. Louis Beef Co. v. Maryland Cas. Co.,* 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1906); *American Fire & Cas. Co. v. Kaplan,* 183 A.2d 914, 915–16 (D.C.1962).

**13.** A dissenting member of the arbitration panel thought that "the facts of [Berkeley's] representation of [the City of] Willcox appear to be vastly overblown—assuming disqualification was re-

quired, it has already been accomplished by the Arizona court, which imposed no other sanction," and found no basis for finding that Berkeley's conduct had damaged AEPCO in any monetary amount. D.C.Bar Counsel imposed the sanction of an informal admonition under D.C.App.Bar Rule XI §§ 3, 6 and 8.

to defend a favorable award against judicial review because under the policy Home was obligated "only for 'any claim *against* [Berkeley] including the appeal thereof.'" Berkeley maintains, persuasively in our view, that AEPCO's appeals to the Arizona district court and the Ninth Circuit are no different and raise no different issues than if AEPCO had filed a separate damage action against Berkeley and lost. *Cf. Miller*, 717 F.2d at 1312. The Ninth Circuit's opinion disposing of AEPCO's appeal makes clear that AEP-CO's effort to prevail on the counterclaim was so closely intertwined with the merits, *see Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d at 991–92, that Berkeley is entitled to reimbursement for the costs of the appeals.

b. Increased contingent fee. Berkeley less persuasively maintains that Home was obligated to pay the increased contingent fee that Berkeley had to pay to Steptoe and Johnson when Home declined to defend him against the counterclaim. We find no clear error by the district court in concluding that the increase was a cost of prosecuting the fee claim. The agreement was not materially altered after the counterclaim was filed; the contingent fee was tied to Berkeley's affirmative case. On the other hand, the district court agreed that Berkeley could recover for the risk he undertook by recovering on the basis of Steptoe and Johnson's full, rather than its reduced, billing rate.

c. All costs of affirmative case. Berkeley also contends that Home was required to reimburse him for all of the costs of his affirmative case after AEPCO filed its counterclaim because of the substantial overlap. He maintains that once AEPCO filed its counterclaim almost all of the costs were for the counterclaim except for valuation, which overlapped the counterclaim and his affirmative case. Hence, he continues, because in reality he was the defendant who had to overcome AEPCO's assertion that his request for additional fees was fraudulent, the district court erred in awarding only the separate costs associated with the counterclaim rather than including overlapping hours.

The district court could properly reject the position that Berkeley was entitled to reimbursement of any expenses he would have had in the absence of the counterclaim, noting that the case on which Berkeley relies, *Voorhees v. Preferred Mut. Ins. Co.*, 246 N.J.Super. 564, 588 A.2d 417 (Ct.App.Div. 1991), *aff'd*, 128 N.J. 165, 607 A.2d 1255 (1992), involved the refusal to segregate distinct defense costs and not defense from prosecution costs. Berkeley's reference to the provision in the policy requiring Home to "defend *any* claim" does not demonstrate error by the district court. Although, as Berkeley correctly notes, the policy is, at least in one sense, without limitation and does not call for the apportionment of costs, the distinction drawn by the district court is consistent with the policy limitation to which Berkeley refers. We find no clear error in its application.

d. Additional expert witnesses. The same reasoning applies to Berkeley's contention that the costs for two additional expert witnesses should have been included in the award because the valuation and counterclaim issues overlapped. The district court allowed reimbursement for the costs of Berkeley's two legal ethics experts, noting that three of the five witnesses for whose costs Berkeley sought reimbursement were experts in the field of energy law and "presumably would have been necessary absent the counterclaim." Berkeley has shown no clear error. He retained the two valuation experts prior to the filing of the counterclaim. Indeed, Berkeley admits in his brief on appeal that had the counterclaim not been filed, the two valuation witnesses would have testified. His argument that they were needed once AEPCO challenged Berkeley's claim that it had received benefits fails in the absence of any showing of how much of their time was devoted to the counterclaim.

e. In-house counsel costs. Berkeley was unable to provide contemporaneous time sheets for in-house counsel, and the district court awarded 50% of the costs in light of post-hoc recollections two years after the fact and methodologically flawed estimates. On appeal, Berkeley has not shown that the district court clearly erred in not using an

apportionment formula. While the district court observed that the rule on contemporaneous time sheets in *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982), did not govern the calculation of damages, it correctly observed that "the concerns that case raises weigh against awarding [Berkeley] the full amount he seeks for his partners' work." Berkeley posits that the failure to have such time sheets is attributable in part to Home's improper declination of coverage when the counterclaim was filed, and in part to the fact that once AEPCO fired Berkeley, he was his firm's only client. The district court's resolution of the matter—rewarding the work done without providing a windfall—was based on a correct legal standard and we find no clear error. Home's argument, that Berkeley is not entitled to reimbursement for these costs because in-house counsel were obligated under the policy to assist in the defense, ignores the fact that the counterclaim was filed against Berkeley only, not his partners, and hence they did not face being held liable to AEPCO.

f. *Out of pocket costs.* Berkeley also contends that he was entitled to recover a portion of his out-of-pocket office costs based on the same allocation formula that the district court approved in granting reimbursement of Steptoe and Johnson's out-of-pocket costs for the counterclaim. Home maintains that Berkeley never presented evidence to show that these costs, including meals, taxis, telephone calls and the fee paid to the American Arbitration Association, were related to his counterclaim rather than his fee claim. The district court included in the award one-half of the requested amount of $77,412.79 for Berkeley's office expenses. The record on which Berkeley relies shows that Berkeley's bookkeeper estimated out of pocket expenses as $24,653.33, of which $18,416.04 was attributable to the counterclaim. Thus, we find no clear error by the district court.

Accordingly, we affirm the grant of summary judgment on count one and the dismissal of count two of the complaint.[14] We also affirm the reimbursement order except to the extent that the district court denied any recovery of costs associated with AEPCO's appeals of the arbitration award; we remand for assessment of those costs.

---

14. We find no abuse of discretion by the district court in denying Berkeley fees for the instant case. *See Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1017 (D.C.Cir.1985). Home had reason to believe that Berkeley's conduct fell within the exclusionary clause. *Cf. Siegel v. William E. Bookhultz & Sons, Inc.,* 419 F.2d 720, 722–24 (D.C.Cir.1969).