**AMERICAN NATIONAL RED CROSS, Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, et al., Defendants.**

Civil Action No. 91–2175 SSH.

United States District Court, D. Columbia.

May 1, 1996.

Gil M. Strobel, J. Lloyd Horwich, Ronald G. Haron, Matthew J. Schlesinger, Gary N. Nunes, Peder A. Garske, Sherry W. Gilbert, Robert H. Shulman, Howrey & Simon (Edward L. Wolf, American Red Cross, of counsel), Karen Shoos Lipton (GC), Edward L. Wolf (Assoc. GC), American Red Cross, Washington, DC, for Plaintiff.

Thomas R. Lotterman, Thomas R. Kline, Andrews & Kurth, Washington, DC, Joseph F. Tringali, Jeffrey G. Bullwinkel, Steven Z. Hodaszy, Daniel E. Reynolds, Marion S. Chan, Jeanne M. Farnan, Stephen V. Gimigliano, Nancy B. Mallery, Simpson, Thatcher & Bartlett, New York City, Kenneth B. Katz, Hoberman & Pollach, Hartford, CT, John J. Kerr, Jr., Melany R. Gray, David B. Smallman, Simpson, Thatcher & Bartlett, New York City, for Travelers Indemnity.

Robert E. Heggestad, Heggestad & Weiss, Washington, DC, for TransAmerica.

Douglas Sederholm, Richard Bortnick, White & Williams, Philadelphia, PA, Ed D'Andrea, Marlton, NJ, for CIGNA.

Nelson Deckelbaum, Deckelbaum, Ogens & Fisher, Washington, DC, Marian Hertz, Thomas Leonard, Sheft & Sheft, New York City, for 1st State Ins. Co.

M. Elizabeth Medaglia, Richard J. DeFeo, Jr., Jackson & Campbell, Washington, DC, Mark Cohen, McCormick & Epstein, Boston, MA, for Granite Ins. Co./Lexington Ins. Co.

Theodore A. Howard, Richard A. Ifft, Rosenman & Colin, Washington, DC, for RLI.

Daniel Karp, Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Scottsdale.

James W. Greene, Ann R. Rogers, Bromley, Greene & Walsh, Washington, DC, for Eric Reins. Co.

S. Robert Sutton, N. Richard Janis, Janis, Schuelke & Wechsler, Washington, DC, for Sentry Ins./Dairyland Ins. Co.

David F. Grimaldi, Martell, Donnelly, Grimaldi & Gallagher, Washington, DC, Richard M. Shusterman, E. Douglas Sederholm, Barbara S. Zellner, Richard J. Bortnick, White & Williams, Philadelphia, PA, for Ins. Co. of North America.

Janice Gail Murphy, Steven M. Levine, Wilson, Elser, Moskowitz, Edelman & Dicker, Washington, DC, for Sedgwick James of VA, Inc.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant Travelers' motion to bifurcate trial in this case, plaintiff American Red Cross's ("ARC") opposition thereto, defendant Travelers' reply, and plaintiff's surreply. Several defendant excess insurance carriers (hereinafter excess insurers) (Transamerican, Insurance Company of North America, Granite State, Lexington, RLI, Eric Reinsurance,[1] Sentry,[2] and Dairyland) have filed responses joining Travelers' motion to bifurcate the trial; Granite State, Lexington, Sentry, and Dairyland also have filed a reply to plaintiff's opposition. Upon consideration of the pleadings and the entire record, Travelers' motion to bifurcate the trial is granted. The Court will not conduct separate trials before separate juries in this case, but will conduct one jury trial in two separate phases.

*Background*

The facts of this case have been fully set forth in the Court's 1993 and 1995 Opinions, and the Court will not restate the facts here. *See American Red Cross v. Travelers Insurance Co.*, 816 F.Supp. 755 (D.D.C.1993) ("*ARC I* "); *American National Red Cross v. Travelers Indem. Co.*, 896 F.Supp. 8 (D.D.C. 1995) ("*ARC II* "). In *ARC I*, this Court granted several excess insurers' motions for partial summary judgment and denied Travelers' motion for partial summary judgment, finding that plaintiff had not exhausted its per-occurrence limit of liability under the relevant Travelers policies, and that the "products hazard" and "completed operations hazard" aggregate liability limits were inapplicable to plaintiff's HIV-contaminated blood claims.[3] 816 F.Supp. at 761. In addition, this Court found that because Travelers had not demonstrated exhaustion of the policy limits, Travelers had a continuing duty to

---

1. Eric Reinsurance Company is the successor to American Excess Insurance Company.

2. Sentry Insurance Company is the assumptive reinsurer for Great Southwest Insurance Company.

3. The excess insurer defendants for whom the Court granted partial summary judgment were RLI, Granite State, Lexington, Sentry, Dairyland, and Scottsdale. 816 F.Supp. at 762.

defend ARC "until it can demonstrate that [ARC's] underlying claims fall outside the scope of coverage of the insurance policies." *Id.* at 761–62.

In *ARC II,* this Court denied three motions by plaintiff for partial summary judgment: one on its claim for punitive damages against Travelers; the second on several of Travelers' 22 affirmative defenses; and the third on the same affirmative defenses based specifically on the Fed.R.Civ.P. 30(b)(6) testimony of Timothy Yessman. This Court stated in *ARC II* that ARC's motion for summary judgment on its punitive damages claim was "premature," since "a final determination has not yet been made as to whether coverage exists for the underlying claims in this action." 896 F.Supp. at 11–12. The Court also held that plaintiff's substantive motion for summary judgment on six of Travelers' affirmative defenses must be denied because genuine issues of material fact as to the defenses, and as to the issues of waiver and estoppel, remained unresolved. Finally, this Court denied summary judgment on the same six affirmative defenses based on Travelers' Rule 30(b)(6) deposition testimony, holding that the fact that Travelers' designated deponent had refused to answer questions about the "facts and documents" Travelers intended to use to support its affirmative defenses was not grounds for summary judgment against Travelers.

Following a November 1995 status hearing, defendant Travelers filed its motion to bifurcate the trial in this case. Travelers argues that the trial should be conducted in two separate parts: the first would address Travelers' affirmative defenses, and the second—if it proved necessary—would address ARC's claim for punitive damages. The above-named excess insurers join Travelers in its request, although, as discussed below, the excess insurers take a slightly different approach to the matter. ARC opposes Travelers' motion, arguing that bifurcating the trial would, among other things, involve needless duplication of issues, evidence, and witnesses.

*Discussion*

■ Under Fed.R.Civ.P. 42(b), a court may bifurcate claims or issues for separate trial "to advance judicial economy, to avoid the possibilities of confusion, to further convenience, to avoid delay and prejudice, and to serve the ends of justice." *Webb v. Hyman,* 861 F.Supp. 1094, 1119 (D.D.C.1994) (citing *O'Dell v. Hercules,* 904 F.2d 1194, 1201 (8th Cir.1990)). A court has broad discretion to choose whether to bifurcate claims in a case for separate trial, and a court may order a case bifurcated even if only one criterion from Rule 42(b) is satisfied. *See Ricciuti v. New York Transit Authority,* 796 F.Supp. 84, 86 (S.D.N.Y.1992) (citing *Ismail v. Cohen,* 706 F.Supp. 243, 251 (S.D.N.Y.1989), *aff'd,* 899 F.2d 183 (2d Cir.1990)).

■ Travelers requests the Court to bifurcate the trial because, in its view, bifurcation would accomplish not just one, but all of the goals enumerated in Rule 42(b). First, Travelers argues that conducting separate trials on Travelers' affirmative defenses and on ARC's bad-faith punitive damages claim would promote judicial efficiency, because a separate trial on Travelers' affirmative defenses "could eliminate the need to try ARC's punitive damages claim." Def.'s Mot. To Bifurcate at 9. Travelers relies heavily on this Court's Opinion in *ARC II* to support this contention. In *ARC II,* this Court declined to grant summary judgment for ARC on its punitive damages claim, holding that "[a]n insured's claim of bad faith breach of contract against its insurer fails if coverage for the underlying claim does not exist." *ARC II,* 896 F.Supp. at 11. The Court concluded that a "determination ... as to whether coverage exists ... is a necessary first step before any resultant determination may be made as to Travelers' bad faith." 896 F.Supp. at 12. *See also O'Malley v. United States Fidelity and Guaranty Co.,* 776 F.2d 494, 501 (5th Cir.1985) (holding that, since recovery on plaintiff's bad faith claim would not have been possible unless plaintiff prevailed on his coverage claim, the district court "acted correctly in bifurcating the issues").

Travelers next argues that failing to bifurcate the trial in this case would cause substantial prejudice to Travelers. Travelers contends that, in an insurance coverage dispute also containing allegations of bad faith,

a defendant insurance company risks being prejudiced if an insured is permitted to try its bad faith claims to a jury along with the underlying coverage issues. *See O'Malley,* 776 F.2d at 501 (affirming district court's bifurcation of trial "to avoid prejudice" that would result if coverage and bad-faith issues tried together); *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.,* 734 F.Supp. 204, 208 (W.D.Pa.1989) (district court ordered trial bifurcated "because of the substantial risk of prejudice to [the defendant insurer] from joining the coverage and bad faith issues").

Finally, Travelers argues that resolving Travelers' affirmative defenses prior to trying ARC's bad-faith claims would be less burdensome for the Court, for the parties, and for the witnesses, and that bifurcating the issues would minimize the likelihood of jury confusion. The excess insurers agree that bifurcating the trial would surely be less burdensome on them; since the excess insurers share Travelers' affirmative defenses, and since plaintiff has not brought a bad faith claim against them, the excess insurers play a part only in the affirmative defenses portion of this case.[4]

Plaintiff disputes Travelers' initial contention that bifurcating the trial would dispose of its bad faith claim, if a jury were to find in Travelers' favor on its affirmative defenses. ARC contends that even if Travelers were to prevail on one or more of its affirmative defenses, a jury could still find that Travelers acted in bad faith when it refused to defend ARC against contaminated-blood claims, since an insurer's duty to defend is broader

than its duty to indemnify. *See Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1418 (D.C.Cir. 1995).[5] ARC also disputes Travelers' assertion that bifurcating the trial would be unduly prejudicial to defendants; it argues that courts "routinely" try bad faith claims together with coverage claims. *See McLaughlin v. State Farm Mut. Auto. Ins. Co.,* 30 F.3d 861, 870–71 (7th Cir.1994) (finding that the district court did not abuse its discretion in denying defendant's motion to bifurcate the trial into separate trials on compensatory and punitive damages issues).

ARC further contends that whatever clarity could be gained from bifurcating the trial would be far outweighed by the duplication of testimony and evidence that would result therefrom. ARC argues that Travelers' motion to bifurcate the trial excluded reference to an important aspect of the trial: namely, ARC's assertions that Travelers waived, or is estopped from asserting, its affirmative defenses. ARC contends that the waiver and estoppel issues overlap with both Travelers' affirmative defenses and ARC's bad-faith claim, and therefore bifurcation would invite submission of the same evidence and testimony at least twice. Such duplication of evidence, ARC argues, would not reduce the complexity of the case, but would only confuse a jury further.

The excess insurers and Travelers apparently disagree on how to address ARC's waiver and estoppel claims in the course of a bifurcated trial. Travelers states in its reply brief that a trial on Travelers' affirmative

**4.** Defendant RLI previously sought Rule 11 sanctions against Travelers in the form of attorneys' fees, following the Court's decision in *ARC I.* The Court denied RLI's motion. *American Red Cross v. Travelers Indemnity Co.,* Civ. No. 91–2175 SSH (D.D.C. August 10, 1993). RLI submits in its response to Travelers' motion to bifurcate that it may have a continuing interest in the case at the bad faith stage, due to its prior motion for sanctions against Travelers. The Court has previously denied RLI's application for attorneys' fees, and it will not revisit the issue.

**5.** Plaintiff also suggests that Travelers' affirmative defenses are "not dispositive of [ARC's] bad faith claim under a tort cause of action." Pl.'s Opp. at 14 n. 8 (citing *Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984)). This Court held in *ARC II,* how-

ever, that no cause of action in tort exists against an insurer for bad faith refusal to provide insurance coverage. *ARC II,* 896 F.Supp. at 12 n. 4 (refusing to follow *Washington* and holding that, although an intra-district split exists on the issue, "the better approach" is that no such cause of action exists.) *See Washington v. GEICO,* 769 F.Supp. 383 (D.D.C.1991) (holding that no separate cause of action in tort for bad faith refusal to provide insurance coverage existed). The only cause of action that could potentially give rise to a punitive damages claim in this case is grounded in contract. As the district court held in *GEICO* "in certain narrow circumstances," where a breach of contract "assumes the character of a wilful [*sic*] tort ... punitive damages may be assessed." 769 F.Supp. at 388 (citations omitted).

defenses "would also resolve ARC's waiver and estoppel defense." Def.'s Reply at 10 n. 9, 13.[6] In their joint reply brief, defendants Granite State, Lexington, Dairyland, and Sentry argue that ARC's waiver and estoppel claims "solely relate to the alleged conduct of Travelers and its relationship with the Red Cross," and that "the same evidence and witnesses are pertinent to the Red Cross' waiver/estoppel and bad faith claims." Excess Ins. Defs.' Reply at 2. The excess insurers argue, unlike Travelers, that since the common affirmative defenses are the only issues shared by Travelers and the excess insurers, the affirmative defenses should be "the sole issues tried" in the first portion of a bifurcated trial. *Id.*

The Court recognizes the possibility that certain evidence may be presented more than once, and certain witnesses may have to testify more than once, if proceedings in this case were to take place in separate trials on the coverage and potential punitive damages issues. The Court is persuaded, however, by the excess insurers' contention that, since the excess insurers only play one part in this trial, considerations of fairness and efficiency militate toward allowing trial of that one part before continuing on. In addition, the Court cannot disregard the defendants' assertion that trial of the defendants' affirmative defenses along with ARC's bad faith claims could subject defendants to undue prejudice.

Accordingly, the Court will bifurcate the trial. It will not conduct separate proceedings before separate juries, but it will conduct trial before one jury in two phases. The first phase will address the defendants' affirmative defenses; the second phase will address ARC's waiver and estoppel claims and ARC's bad faith claims against Travelers. *See Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 117 (E.D.La.1992) (denying defendant's motion to fully bifurcate the trial, but ordering that trial would proceed in three separate phases: liability, compensatory damages, and punitive damages).

Dividing trial into two segments will not invite unduly duplicative evidence and testimony, since the phases of trial will deal, for the most part, with separate time frames: the first phase encompasses approximately the years 1982 through 1985, and the second encompasses approximately the years 1985 through 1991. While bifurcating the trial in this fashion does not erase the apparent disagreement between Travelers and the excess defendants regarding the proper treatment of ARC's waiver and estoppel claims, Travelers itself at one point characterized ARC's estoppel claims as being interwoven with ARC's bad faith claims. *See supra* note 6.

The Court does not intend this Opinion to state that evidence of Travelers' alleged bad faith automatically will be submitted to the jury for their consideration of punitive damages. While a verdict for ARC on defendants' affirmative defenses may justify an award of compensatory damages, ARC's bare assertion of bad faith does not, in and of itself, justify sending the punitive damages issue to the jury as well. *See Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1436–37 (10th Cir.1993) ("The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination.... Until the facts ... have established what might reasonably be conceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed") (citations omitted). *See also Washington v. GEICO,* 769 F.Supp. 383, 388 (D.D.C.1991) (punitive damages only available in breach of contract action "where a breach of contract merges with and assumes the character of a wilful [*sic* ] tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust....") (citing *Central Armature Works v. Am. Motorists Ins. Co.,* 520 F.Supp. 283, 292 (D.D.C.1980)).

Finally, as noted above, ARC contends that even if Travelers successfully asserts its affirmative defenses to coverage (and, as-

---

**6.** In Travelers' brief in support of its motion to bifurcate, however, Travelers appears to treat the waiver and estoppel issues as being bound up with ARC's bad faith claims. Def.'s Mem. In Support of Mot. To Bifurcate at 7 ("in connec-

tion with [ARC's punitive damages claim], ARC may attempt to present evidence concerning Travelers purported 'course of conduct' with respect to the handling of HIV claims between 1985 and 1990.")

sumedly, if the jury also finds that Travelers is not estopped from asserting those defenses), ARC still may present evidence to support a punitive damages claim, based on Travelers' refusal to defend ARC. This argument appears to be fully foreclosed by the Court's Opinion in *ARC II*.[7] If the above-described circumstances come to pass, however, the Court will hear argument at that time on the continued viability of ARC's punitive damages claim.

A trial date has not yet been set in this case. The Court requests that, in lieu of a formal status hearing, ARC and Travelers confer and, after conferring as well with the excess insurer defendants, jointly submit to the Court a proposed date or dates for trial in either late September 1996 or November 1996. (The joint submission should also indicate how long the parties anticipate the trial will last.)

---

**7.** *But see Timberlake Construction Co. v. United States Fidelity & Guaranty Co.,* 71 F.3d 335, 343 (10th Cir.1995) (in certain cases, "an insured may pursue a claim of bad faith even where the insurer has a legitimate defense to coverage").