Arnold D. **BERKELEY**, Plaintiff,

v.

**HOME INSURANCE COMPANY**, Defendant.

Civil Action No. 93–0254–LFO.

United States District Court, District of Columbia.

May 21, 1997.

## MEMORANDUM

OBERDORFER, District Judge.

This matter is here on remand for the resolution of one outstanding issue pertaining to plaintiff Arnold Berkeley's claim for reimbursement from his insurance carrier. *See Berkeley v. Home Insurance Co.* 68 F.3d 1409 (D.C.Cir.1995). Berkeley is an attorney practicing in Arizona, who brought suit against his legal malpractice insurer, defendant Home Insurance Co. ("Home"). for alleged breach of contract. His claim arose when Home refused to defend Berkeley against one of his former clients, Arizona Electric Power Cooperative. Inc. ("AEP-CO"). AEPCO had brought a malpractice claim against Berkeley during an arbitrated fee proceeding. Berkeley independently retained the services of Steptoe & Johnson ("Steptoe") and substantially prevailed at arbitration. His award was subsequently affirmed by the United States District Court for the District of Arizona and the United States Court of Appeals for the Ninth Circuit. *See Arizona Electric Power Cooperative, Inc. v. Berkeley,* 59 F.3d 988 (9th Cir. 1995).

In this case. Berkeley seeks indemnification from Home for his costs incurred in retaining Steptoe out of his own pocket. On January 26, 1994, a Memorandum and Order granted summary judgment against Home, finding that the insurance company had a duty to reimburse Berkeley. The D.C. Circuit subsequently affirmed that ruling. *See Berkeley v. Home Insurance Co.* 68 F.3d at 1420, but remanded for an assessment of Berkeley's costs incurred in defending his arbitration award in federal court.

## I.

The payment method by which Berkeley compensated Steptoe for its legal services is somewhat complicated. Berkeley originally hired Steptoe in 1992 during the AEPCO arbitration. Berkeley had initiated the arbitration in order to recover unpaid attorneys' fees: however, AEPCO soon counterclaimed, alleging legal malpractice. After Home declined to represent Berkeley, he retained Steptoe pursuant to a "combination" fee arrangement that included an hourly rate provision *and* a contingency fee component. Steptoe agreed to charge a reduced hourly rate that would be subject to a cap on total fees, in exchange for a percentage of the recovered attorneys' fees.

After the arbitration proceedings resulted in a substantial award to Berkeley, AEPCO brought suit in federal court, seeking to vacate the award. Thereupon, Berkeley and Steptoe entered into a second fee arrangement regarding the defense of the arbitration award in federal court. Pursuant to a Letter Agreement dated January 26, 1993, Berkeley agreed to pay' Steptoe at a discounted hourly rate, with a total cap on fees not to exceed $100,000. Berkeley also agreed to be responsible for any out-of-pocket expenses incurred by Steptoe. Most importantly, for the purposes of this remand, the Letter Agreement specifically stated that "the fees described in this section shall not be subject to the 'incentive contingency fee' provision of our [prior] agreement." In total, Berkeley paid to Steptoe $155,463.46 (consisting of $100,000 in fees and $55,463.46 in expenses) for representing him in the District of Arizona and the Ninth Circuit.

After the arbitration award was upheld in the Ninth Circuit, AEPCO indicated that it would seek a writ of certiorari from the United States Supreme Court. Before a petition for certiorari was filed, however, Berkeley agreed to pay $100,000 to AEPCO in order to forgo the expense and risk of any Supreme Court litigation. Berkeley eventually paid $82.750 to AEPCO, while Steptoe paid the remaining $17,250.

## II.

On remand, Berkeley seeks the recovery of over $1 million in attorneys' fees allegedly paid to Steptoe. His proposed order requests reimbursement in the amount $1,041,-613.58. That sum consists of four separate components: (1) § 404,260.23—the amount paid to Steptoe for its work during the arbitration and reflected in the Order dated July

15, 1994, later affirmed by the Court of Appeals: (2) $465,318.46—the amount Berkeley contends he *would* have paid to Steptoe if the law firm had charged its standard hourly rate for defending the arbitration award in federal court: (3) $82,750—the amount paid to AEPCO to induce its forgoing a petition for a writ of certiorari from the Supreme Court: and (4) pre- and post-judgment interest on the above three amounts. Each of those four components will be considered separately.

### A.

First, Berkeley seeks to incorporate in this judgment an amount reflecting the original award for fees and expenses incurred during arbitration. He has already obtained a ruling in his favor, however, against Home for $404,260.23 plus pre-judgment interest. That amount represents the fees paid by Berkeley to Steptoe during the underlying arbitration proceedings. The Court of Appeals has affirmed that ruling. Post-judgment interest is now accruing at a rate of 5.49 percent per year. Any subsequent judgment incorporating that prior assessment would be cumulative. Accordingly, the first claim asserted by Berkeley will be denied.

### B.

Second, Berkeley seeks to recover any fees and expenses incurred in defending his arbitration award in federal court. This remand was directed specifically towards an assessment of those costs. *See Berkeley v. Home Insurance Co.* 68 F.3d at 1420. Berkeley now argues that he should be entitled to over $460.000 in fees paid to Steptoe. It is undisputed. however. that his actual payments totaled only $155,463.46.

In order to justify this claimed entitlement to a $300,000 windfall, Berkeley contends that he should be compensated for the *projected* fees that he *would* have paid to Steptoe if the law firm had billed him at its standard hourly rate. Berkeley contends that he was able to negotiate a lower hourly rate only because he had originally entered into a partial contingency fee arrangement with Steptoe for its work during the arbitration proceeding. Thus, when he was negotiating the second fee arrangement, he could rely on the fact that Steptoe had its own financial interest in upholding the arbitration award. *See* Kail Aff. ¶ 3. Berkeley submits the affidavit of a Steptoe attorney who states that:

> We [the Steptoe partnership] agreed to both the cap on our fees and the 80 percent limitation in light of our pre-existing fee agreement and taking into account the contingent fee to which we were entitled because of the fee award against AEPCO. *Id.*

Berkeley further points out that the Court of Appeals affirmed a prior ruling in this case. *See* Part II.A, *supra,* which calculated the reimbursement for Steptoe's services in the underling arbitration based on a calculation of the law firm's *standard* billing rate, even though Berkeley's actual payments were considerably greater by virtue of the contingency fee arrangement. Berkeley argues that the same principle of using the standard billing rate should apply here—but now in his favor.

■ As the Court of Appeals explained, however, the ruling that governed indemnification for Steptoe's arbitration work was context-specific. The difficult, in that situation was that the arbitration concerned both Berkeley's claim for unpaid attorneys' fees from AEPCO *and* AEPCO's counterclaim. Yet the malpractice insurance policy issued by Home covered only the cost of defending against the counterclaim. Home had no responsibility for paying Berkeley's costs incurred in collecting his unpaid attorneys' fees. *See Berkeley v. Home Insurance Co.* 68 F.3d at 1419.

That fact notwithstanding, in the original portion of this case, Berkeley sought reimbursement from Home for the *entire* fee paid to Steptoe. Home, of course, balked at reimbursing Berkeley for any portion of the Steptoe fee that was attributable to the collection aspect of the arbitration. Unfortunately. given the structure of the original "combination" fee arrangement, an accurate allocation between the two aspects would have been extremely difficult, if not impossible. The Court of Appeals affirmed a ruling that, in

effect, reimbursed Berkeley for a portion of the risk that he undertook by agreeing to a partial contingency fee arrangement. That was accomplished by increasing the hourly rate component from a reduced hourly rate to the standard hourly rate. *See id.*

The foregoing demonstrates the flaw in Berkeley's claim that the "law of the case" requires reimbursement based on Steptoe's standard hourly rate for the post-arbitration litigation.[1] Indemnification for that work should be determined by the second Letter Agreement, which expressly removed any contingency fee element, and thereby eliminated any justification for an adjustment such as the one described above. In short, the issue presented on remand was not reached previously by either this Court or the Court of Appeals. It is now resolved in favor of Home. Accordingly, an accompanying Judgment will award Berkeley $155,463.46 plus pre-judgment interest.

### C.

Third, Berkeley seeks the recovery of $82.750.00 paid to AEPCO as a settlement in order to induce its forgoing any Supreme Court litigation. Home argues that it should not be held liable for that sum because it was not expended in tile course of "defending" Berkeley from any legal malpractice claim. Even if that were be true, however, Home also contracted in its insurance policy to pay "all sums . . . which the Insured shall become legally obligated to pay as damages . . . .'" The term "damages" is defined to include "a monetary judgment or *settlement.*" In this case, there is no dispute that the $82,750.00 given by Berkeley to AEPCO was in settlement of their litigation.

In addition, Home has not argued that the settlement amount was unreasonable. Nor could it raise such an argument now. Home had an opportunity to represent Berkeley in the underlying arbitration and litigation, yet refused to do so. It should be bound by that decision and be obligated to pay whatever settlement amount Berkeley later reaches.[2] Accordingly, the accompanying Judgment will award Berkeley $82,750.00.

### D.

Lastly, the parties have some dispute over the pre- and post-judgment interest rates to be applied here. Pre-judgment interest on the original award entered on July 15, 1994 has already been calculated. Post-judgment interest on that amount shall accrue under 28 U.S.C. § 1961(b) (1994). The post-judgment interest rate for judgments entered in July 1994 is 5.49 percent.[3]

Prejudgment interest on the amounts now being awarded—the $155,463.46 and $82,750.00—shall accrue from their respective dates of payment. September 22, 1995 and October 14, 1995. Post-judgment interest on those amounts shall accrue from the date of the accompanying Judgment.

### JUDGMENT

As stated in the accompanying Memorandum, it is this 21st day of May 1997 hereby ORDERED: that plaintiff Arnold Berkeley shall be awarded an additional $155,463.46 plus pre-judgment interest; and is further

ORDERED: that plaintiff Berkeley shall be awarded $82,750.00 plus pre-judgement interest.

---

1. Berkeley relies on the doctrine known as the law of the case, because otherwise he cannot circumvent the black-letter law that a plaintiff alleging breach of contract is limited to recovery of only those damages actually suffered. *See* Restatement (Second) of Contracts § 347 cmt. e, illus. 12 (1981).

2. There may be some situations where an insured negotiates a settlement in bad faith, by relying on the fact that he or she will be indemnified by the insurer. In those cases. the insurer may be able to argue that the insured failed to mitigate damages in a reasonable manner. There is no such indication of bad faith, however, in this case.

3. Home contends that post-judgment interest on the original award should accrue from November 3, 1995. the date that the Court of Appeals issued its affirmance. It also notes that the post-judgment interest rate for judgments entered in November 1995 is 5.45 percent. Those claims are without merit. *See* Fed. R. App. P. 37 (1997) (post-interest judgment accrues from date of district court ruling).